# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## NO. 13-3588

---

**COURTNEY DOUGLASS, individually and on
behalf of all others similarly situated,**

Appellant,

v.

**CONVERGENT OUTSOURCING,**

Appellees.

---

**On Appeal from the United States District Court
for the Eastern District of Pennsylvania
in Civil Action No. 12-cv-1524(JHS)**

---

## BRIEF OF APPELLANT
### ***
## APPENDIX VOLUME I (R. 1 – R. 15)

---

Cary L. Flitter
Theodore E. Lorenz
Andrew M. Milz
FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

SaraEllen Hutchison
Law Office of SaraEllen
Hutchison, PLLC
1752 N.W. Market Street #915
Seattle, WA 98107
(206) 529-5195

Attorneys for Appellant
Courtney Douglass

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................. iii

I.     STATEMENT OF JURISDICTION ............................................. 1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................... 1

III.   STATEMENT OF THE CASE ................................................. 2

IV.    STATEMENT OF RELATED CASES ........................................... 7

V.     STANDARD OF REVIEW ................................................... 7

VI.    SUMMARY OF ARGUMENT ................................................. 8

VII.   LEGAL ARGUMENT ...................................................... 10

   A.   The FDCPA Protects Consumers from Collector Misconduct and Invasions of Individual Privacy ........................................... 10

      1.   The FDCPA Bans "Any Language or Symbol" on an Envelope ........... 10

      2.   The District Court's Reformulation of § 1692f(8) Departed From Settled Rules of Deference ................................................ 12

   B.   There Was No Reason to Depart from the Plain Meaning and Apply a "Benign Language" Exception to these Facts ......................... 16

      1.   Banning the Display of Account Numbers is Not Absurd or Difficult to Fathom ..................................................... 16

      2.   There is no Evidence of "Unnecessary Restriction," but a Legislative Remark Does Not Trump the Statutory Text. ......................... 21

   C.   A Financial Account Number is Nothing Like "Priority Letter" or "Transmittal" or "Confidential" Printed on an Envelope ............... 27

i

1.    Only the Most Innocuous Language or Markings Have Been Called
"Benign" ................................................................................................. 27

2.    Section 1692f(8) Bans "Any Language or Symbol," not Just Two Narrow
Types of Language or Symbols ........................................................... 29

3.    The Account Number was Unredacted and Visible to the Naked Eye; it
Cannot be Labeled a "Jumble" or Compared to a Scannable Bar Code .......... 31

D.    The District Court Erred in Weighing Competing Evidence at Summary
Judgment .......................................................................................... 35

VIII.  CONCLUSION ........................................................................ 38

CERTIFICATION OF BAR MEMBERSHIP

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

CERTIFICATE OF BRIEF TEXT

CERTIFICATION OF VIRUS CHECK

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008) .................................................. 17

*Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) .. 11, 31, 32

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................ 7, 37

*Anderson v. Wachovia Mortgage*, 621 F.3d 261 (3d Cir. 2010) ............................ 37

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ...................... 19

*Brown v. Card Service Center*, 464 F.3d 450 (3d Cir. 2006) ... 10, 12, 17, 21, 24, 29

*Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142
(3d Cir. 2013) ....................................................................................................... 12

*Davis v. Baron's Creditors Serv. Corp.*, 2001 WL 1491503
(N.D. Ill. Nov. 20, 2001) ..................................................................................... 38

*E.I. DuPont De Nemours and Co. v. U.S.*, 460 F.3d 515 (3d Cir. 2006) ................ 30

*Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561 (3d Cir. 2002) ................................. 13

*FTC v. Morton Salt Co.*, 334 U.S. 37 (1948) ......................................................... 37

*Goswami v. Am. Collections Ent., Inc.*, 377 F.3d 488
(5th Cir. 2004) ................................................................... 15, 16, 27, 29, 30

*Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242 (2010) .............................. 13, 22

*Heintz v. Jenkins*, 515 U.S. 291 (1995) .................................................................. 22

*In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248 (3d Cir. 2009) ................. 13

*In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829 (3d Cir. 1990) ........................ 7, 37

*Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2d Cir. 2008) ............. 21, 31

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*,
559 U.S. 573 (2010) ............................................................................. 11, 21, 29

*Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993 (3d Cir. 2011) ..... 7, 13

*Lindbergh v. Transworld Sys.*, 846 F. Supp. 175 (D. Conn. 1994) ....................... 28

*Marx v. Gen. Revenue Corp.*, 668 F.3d 1174 (10th Cir. 2011) ...................... 31, 32

*Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456 (C.D. Cal. 1991) ............. 28

*Merchants Ins. v. Ritchie*, 72 U.S. 541 (1866) ......................................................... 13

*Owens v. Brachfeld*, 2008 WL 3891958 (N.D. Cal. Aug. 20, 2008) ..................... 12

*Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2d Cir. 1989) ................ 26

*Pressley v. Capital Credit & Collection Serv.*, 760 F.2d 922 (9th Cir. 1985) ........ 26

*Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440 (1989) .......................... 23, 24

*Reibstein v. Rite-Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Pa. 2011) ........................ 19

*Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535
(3d Cir. 2006) .......................................................................................................... 7

*Schweizer v. Trans Union Corp.*, 136 F.3d 233 (2d Cir. 1998) ....................... 11, 24

*Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013) .............................. 32

*Stewart v. Allied Interstate, Inc.*, 2011 WL 2199716 (E.D.N.Y. June 6, 2011) ..... 18

*Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316 (8th Cir. 2004) ...... 27, 28

*Thomas v. George, Hartz*, 525 F.3d 1107 (11th Cir. 2008) ................................... 37

*TRW v. Andrews*, 534 U.S. 19 (2001) ............................................................... 16, 17

*U.S. v. Am. Trucking*, 310 U.S. 534 (1940) .......................................................... 27

*Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004) ...................................... 11

**Statutes**

5 U.S.C. § 552a(4)(b) ............................................................ 20

12 U.S.C. § 1843(k) ............................................................ 18

12 U.S.C. § 1843(k)(4)(F) ............................................................ 18

12 U.S.C. § 1843(k)(1)(A) ............................................................ 18

15 U.S.C. § 1681c(g)(1) ............................................................ 19

15 U.S.C. § 1692 ............................................................ 1

15 U.S.C. § 1692(a) ............................................................ 10, 17, 21, 24, 28

15 U.S.C. § 1692a(2) ............................................................ 32

15 U.S.C. § 1692c(b) ............................................................ 31

15 U.S.C. § 1692(e) ............................................................ 17, 21, 24

15 U.S.C. § 1692e(11) ............................................................ 25, 26

15 U.S.C. § 1692f ............................................................ 11, 12, 14, 21

15 U.S.C. § 1692f(8) ............................................................ *passim*

15 U.S.C. § 1692k ............................................................ 1

15 U.S.C. § 6801 ............................................................ 18

15 U.S.C. § 6801(a) ............................................................ 18

15 U.S.C. § 6809(3)(A) ............................................................ 18

28 U.S.C. § 1291 ............................................................ 1

28 U.S.C. § 1331 ............................................................ 1

28 U.S.C. § 1337 ............................................................ 1

**Other Authorities**

S.Rep. No. 95–382 (1977)..................................................................... 21

Federal Reserve Bank of New York, *Quarterly Report on Household Debt and Credit* (May 2012) ................................................................. 36

Webster's Ninth New Collegiate Dictionary (1987) ....................................... 33

**Rules**

3d Cir. L.A.R. 25.3.............................................................................. 20

3d Cir. L.A.R. 27.2.............................................................................. 20

3d Cir. L.A.R. 32.1.............................................................................. 20

3d Cir. L.A.R. 32.2.............................................................................. 20

3d Cir. L.A.R. Misc. 113.12............................................................... 5, 20

**Regulations**

12 C.F.R. § 225.28(b)(2)(iv) ................................................................ 18

12 C.F.R. § 1090.105 .......................................................................... 18

16 C.F.R. § 313.3(o)(1)(ii)................................................................... 19

45 C.F.R. § 164.514(b).......................................................................... 20

53 Fed. Reg. 50097–02 (Dec. 13, 1988) ............................................... 28

## I.    STATEMENT OF JURISDICTION

This is the appeal of the August 6, 2013 final order of the United States District Court for the Eastern District of Pennsylvania (Slomsky, J.), granting Defendant/Appellee's motion for summary judgment on Plaintiff/Appellant's claims under the Fair Debt Collection Practices Act ("FDCPA") subchapter of Consumer Credit Protection Act, 15 U.S.C. § 1692, *et seq*. (Opinion and Order; R. 3-15). Appellant timely filed her notice of appeal on August 23, 2013. (R. 1).

The district court had federal question jurisdiction arising under the FDCPA, 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331 and 1337. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

Appellee debt collector chose to expose personal identifying information – the account number it assigned – visibly in the window of the envelope it sends through the mail. The FDCPA at 15 U.S.C. § 1692f(8) specifically prohibits a debt collector from "using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

1.    In light of the clear legislative directive and the Act's declaration of purpose to protect against invasions of individual privacy, did the district court err

by refusing to apply § 1692f(8) as written to bar the debt collector from disclosing the account number on envelopes it mails to the consumer?

Suggested answer: Yes

2. Did the district court err by judicially engrafting a "benign language" exception to § 1692f(8)'s broad ban, then curtailing the reach of the section such that Douglass' suit over the public exposure of her personal identifying information – her account number – is then excluded from coverage?

Suggested answer: Yes

3. Did the district court err at summary judgment by failing to consider record evidence that public disclosure of personal identifying information, such as the consumer's account number, may be harmful and ill-advised, and by weighing competing evidence, holding that the Court was "more convinced by Defendant's expert than by Plaintiff's?

Suggested answer: Yes

## III.  **STATEMENT OF THE CASE**

This matter was commenced by the filing of a Complaint under the Fair Debt Collection Practices Act ("FDCPA") on March 26, 2012. (*See* Doc. No. 1).[1]  The

---

[1]     The initial Complaint was filed by Elisa Brooks-Cunningham. The originally named Defendant was ER Solutions, Inc. ER Solutions changed its name to Convergent Outsourcing, and the Complaint was amended to reflect the name change.

Complaint was amended twice; first to assert class allegations, and then to redefine the contours of the Class and to allow Courtney Douglass to act as the sole Plaintiff and Class Representative. (*See* Doc. Nos. 2 & 29, Second Amended Complaint "SAC", R. 26).

The SAC alleges that ER Solutions (now Appellee Convergent Outsourcing) sent a collection dun to Appellant Courtney Douglass on May 16, 2011. The letter was an effort to collect on a consumer debt, *i.e.*, a bill claimed due to T-Mobile USA for cellular phone service. (R. 11). The May 2011 letter was sent to Douglass in a window envelope. Through the window of the envelope, there is visible the account number that Convergent assigned to Douglass for collection of the debt claimed due. A copy of the May 16, 2011 collection letter can be found at R. 99, and the top portion of the letter is reproduced here (save partial redaction of the account number per L.A.R. Misc. 113.12):



ATERSO01
PO Box 1022
Wixom MI 48393-1022
CHANGE SERVICE REQUESTED

R-█████5459-R241     546618658
Courtney Douglass
228 King St Apt 3
Pottstown PA 19464-5515



ERS*olutions, Inc.*

ER Solutions, Inc. 800 SW 39th St.
PO Box 9004 -Renton, WA 98057
Mon-Fri 7AM-7PM PST
Date: 05/16/2011
Creditor: T-Mobile
Client Account #: █████6341
ERS Account #: R-█████5459

Principal:      $ 802.04
Total Balance:  $ 802.04

(R. 99).

3

According to Lisa Burton, Client Service Manager at Convergent, the above May 16, 2011 letter is a form letter that Convergent calls an "R241 letter." (Burton dep. dated Jan. 30, 2013 at pp. 41-42; R. 212-13). The "R241" reference appears just to the right of the account number, immediately above the consumer's name and address. Convergent uses a mail vendor called RevSpring (formerly Dantom Systems) to print and mail the letter to consumer debtors. (*Id.*). The R241 is mailed in a window envelope. As noted, the recipient's account number (here "xxxx5459" for Courtney Douglass) is visible above the recipient's name and USPS bar code. (*See* Robert Flynn, CFO of RevSpring, dep. dated Feb. 15, 2013 at pp. 27-31; R. 250-51). The account number that is exposed through the glassine window of the envelope "corresponds to the [Convergent] account number" and is visible without any type of scanning device. (*Id.* at R. 251, p. 30).

The SAC also alleged that a digitized symbol commonly known as a quick response, or "QR Code" was also visible through the window of the envelope. The QR Code, which, when read with any popular device, revealed: the consumer's account number, the consumer's name and address, and the amount of the debt claimed due through the window of the envelope. Ms. Douglass's account number: "xxxx5459", as well as the amount claimed due: "802.04", were revealed by

scanning the QR Code in the top left corner of the mailing.[2]  (*See* SAC at ¶ 13; R. 27, QR Code Scan; R. 111).  When the QR Code is scanned by a QR reader available as an application on a cell phone or tablet device, it reveals the following (all but last four digits redacted per L.A.R. Misc. 113.12):



(R. 111).

---

[2]    To streamline the issue for appeal, Douglass is not pressing here her averment that the QR Code as used is violative.  The appeal challenges the holding below as it relates to the presence of the assigned account number through the window envelope.  Douglass offers these brief facts and a reproduction of the QR Code Scan as background and to help put the district court's opinion in context.

In the SAC, and in this appeal, Douglass alleges that Convergent's placement of the assigned E.R.S. (now Convergent) account number through the window of the envelope (replicated at p. 3 *supra*) violates the Fair Debt Collection Practices Act at 15 U.S.C. § 1692f(8), which prohibits any such disclosure. Plaintiff Courtney Douglass brought this action on her own behalf and on behalf of a Class of all persons with addresses in Montgomery County, Pennsylvania, who received a similar letter. (SAC ¶ 17-18; R. 28).

On November 30, 2012, Convergent filed a Motion for Summary Judgment, arguing that the court should adopt a "benign language" exception to the statute and that, based upon the cases that adopted such an exception, display of the assigned account number does not violate. (Doc. No. 36; R. 49). The district court set a schedule for further discovery and briefing. On May 15, 2013, Douglass filed her Response in Opposition, (Doc. No. 52; R. 81), and on May 21, 2013, Convergent filed a Reply in Support of Summary Judgment. (Doc. No. 54; R. 128). On May 29, 2013, the Court heard argument on the Motion for Summary Judgment, deferring any consideration of class certification. After oral argument, Plaintiff submitted a supplemental brief in opposition, addressing some questions raised. (Doc. No. 60; R. 150). On June 17, 2013, Defendant filed a third brief in support of summary judgment. (Doc. No. 61; R. 155). On August 6, 2013, the Court granted Defendant's Motion for Summary Judgment and entered judgment in favor of the Defendant

Convergent Outsourcing (Order; R. 3). A copy of the district court's opinion is appended at R. 4-15. Douglass timely filed her Notice of Appeal on August 23, 2013. (R. 1).

For the reasons set forth herein, the district court's grant of summary judgment in favor of Convergent was in error and should be reversed.

## IV.   STATEMENT OF RELATED CASES

This case has not previously been before this Court. Plaintiff/Appellant is unaware of any other case or proceeding that is related, completed, pending or about to be presented before this Court or any other court or agency, state or federal.

## V.   STANDARD OF REVIEW

This Court applies *de novo* review to a district court's order granting summary judgment. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 996 (3d Cir. 2011). In doing so, the Court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and are thus inappropriate at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 841-42 (3d Cir. 1990).

## VI.   <u>SUMMARY OF ARGUMENT</u>

Appellee/Defendant Convergent, one of the country's largest debt collectors, sought to collect a disputed cellphone bill from Appellant/Plaintiff Courtney Douglass.  For reasons explained nowhere in the record, Convergent has had a practice of placing the account number it assigns to the consumer debt immediately above the consumer's name and address, plainly visible through the window envelope when mailed.  An account number constitutes personal identifying information, and the record evidence here establishes that an entity such as Convergent that deals with consumers' personal and confidential financial information is ill-advised to place such identifiers on the millions of envelopes that Convergent sends through the mail.

The Fair Debt Collection Practices Act (FDCPA or the Act) is remedial consumer legislation in which Congress, in its effort to protect consumer privacy, expressly prohibited debt collectors from engaging in the precise practice that Convergent did here: "using any language or symbol [except for a non-suggestive name, and an address] on any envelope when communicating with a consumer through the mails…" 15 U.S.C. § 1692f(8).  Several courts in other circuits, faced with cases challenging envelope markings such as "personal" and "transmittal letter" and under the rubric of the absurdity doctrine, created an exception to the Act's plain language for what they called "benign language."  The court below embraced that

exception, and then, quoting from those cases out-of-context, excused the patent violation here. The district court held that § 1692f(8) is violated only when envelope markings signal debt collection or humiliate or threaten the debtor.

Ms. Douglass demonstrates below that it was error for the lower court to fail to follow the unambiguous statutory ban and instead employ a narrower, extra-statutory test, culled from very different cases, to find the public disclosure of Ms. Douglass' unredacted account number on Convergent's envelope to be benign, and therefore non-actionable, as a matter of law. A statute that bans the public disclosure of personal identifiers such as a consumer's account number is not absurd and serves important public policy goals. Indeed, a myriad of laws, including this Court's own Rules of Appellate Procedure, require the redaction of account numbers.

Deference to legislative enactment – even separate from the liberal application to be afforded the FDCPA – dictates that the district court applied an erroneous standard. The district court erred in refusing to enforce the Act as written based upon its own conclusion that doing so would impose unnecessary restrictions on debt collectors. The court is not free to disregard an unambiguous statute in favor of an "unnecessary restriction" test derived from legislative history, and Convergent offered no evidence of unnecessary restriction in any event.

Finally, the district court erred in weighing competing evidence at summary judgment. The district court should not have dismissed Douglass' FDCPA case on

the premise that, in reviewing the motions, the court was "more convinced by Defendant's expert." While Convergent's public disclosure of Ms. Douglass' account number on a piece of mail is barred by the straightforward language of §1692f(8), and thus there is no need on these facts to reach the issue of an asserted "benign language" exception, whether or not the public disclosure of personal identifying information is "benign language" is, at minimum, on this record, a jury question. The case therefore must be reversed and remanded for further proceedings.

## VII. <u>LEGAL ARGUMENT</u>

### A. <u>The FDCPA Protects Consumers from Collector Misconduct and Invasions of Individual Privacy</u>

#### 1. The FDCPA Bans "Any Language or Symbol" on an Envelope

The FDCPA was passed in 1977 upon Congressional findings of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a); *Brown v. Card Service Center,* 464 F.3d 450, 453 (3d Cir. 2006). According to the Act's congressional findings and declaration of purpose, such practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

To further these ends, the FDCPA broadly bans a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C.

§1692f; *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011). The FDCPA is a strict liability statute. *Id.* at 368 and n.7. Specifically, Congress legislated what a debt collector may and may not place on an envelope that the collector sends through the mails. 15 U.S.C. § 1692f and f(8) provides: "Without limiting the general application of the foregoing [1692f], the following is a violation of this section:

> using any language or symbol other than the debt collector's address, on any envelope when communicating with a consumer by the use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

*Id.* A central purpose of § 1692f(8) is "to protect the privacy of the debtors." *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 238 (2d Cir. 1998).

Congress intended the FDCPA to enjoy robust enforcement by debtors acting as private attorneys general, and specifically by the private class action mechanism. *Weiss v. Regal Collections,* 385 F.3d 337, 345, n.13 (3d Cir. 2004). In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA,* 559 U.S. 573, 603 (2010) the Supreme Court, noting the over 70,000 debt-collection grievances filed by consumers with the Federal Trade Commission every year, recognized "the FDCPA's calibrated scheme of statutory incentives to encourage self-enforcement."

"As remedial legislation, the FDCPA must be broadly construed in order to give full effect to [its] purposes." *Caprio v. Healthcare Revenue Recovery Grp.,*

*LLC,* 709 F.3d 142, 148 (3d Cir. 2013); *Allen,* 629 F.3d at 368; *Brown,* 464 F.3d at 453. The FDCPA, and in particular, the Unfair Practices prohibitions of § 1692f, are strict liability provisions designed in part to provide a "deterrent effect." *Allen,* 629 F.3d at 368 & n.7.

The language chosen by Congress is exceptionally clear as to what a debt collector may and may not expose on collection correspondence that passes through the mails: no language or symbols may be used, except the collector's address, and his business name, but only if that name does not indicate that the collector is in the debt collection business. 15 U.S.C. § 1692f(8). This is a blanket prohibition that regulates a debt collector's conduct at the source. Even before applying a liberal reading, *Brown,* 464 F.3d at 453, Convergent's public disclosure on mailed envelopes of personal identifying information -- the account number it assigned to this debt of this consumer -- violates Section 1692f(8) on its face. (*See* Convergent letter, R. 99, operative portion of the letter is reproduced at p. 3 *supra*).[3]

## 2. The District Court's Reformulation of § 1692f(8) Departed From Settled Rules of Deference

The Court's inquiry can and should end with the statute's unambiguous language. Where a statute's language is unambiguous and expresses Congress'

---

[3]    Information appearing through the window of the envelope is covered by the ban on language "on any envelope." *See Owens v. Brachfeld*, 2008 WL 3891958 *2 (N.D. Cal. Aug. 20, 2008)(citing cases).

intent with sufficient precision, the Court "need not look further." *Allen,* 629 F.3d at 367 (citing *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009)). For over a century, the rule of law has required application of an unambiguous statute as written. *See Merchants Ins. v. Ritchie*, 72 U.S. 541 (1866) ("it is quite possible that this effect of the Act . . . was not contemplated by Congress . . . but when terms are unambiguous we may not speculate on the probabilities of intention."); *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561 (3d Cir. 2002) (applying plain language where there are "plausible policy reasons why Congress might have intended [the result]."). *See also Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 251 (2010) (citing cases) ("We must enforce plain and unambiguous statutory language according to its terms."). Adding a non-existent qualifier to a "statute from which it is conspicuously absent more closely resembles inventing a statute rather than interpreting one." *Hardt*, 560 U.S. at 252.

It is more than plausible that Congress chose, in this consumer protection statute, to create a bright-line rule to protect against "invasions of individual privacy." *Lesher*, 650 F.3d at 996, *quoting* 15 U.S.C. § 1692(a). After all, a bright-line rule benefits ethical businesses as well by providing clear guidance on matters as mundane but important as what may be exposed to the public on millions of pieces of interstate mail.   A bright line test also avoids a race-to-the-bottom, where

collectors, out of expediency, may be tempted to gradually encroach into areas of prohibited conduct if the rules are decided on an *ad hoc* basis.

This Court has never added a benign language exception to the text of § 1692f(8) nor the other subsections of § 1692f.  And surely, this Court has never held that the broad language of § 1692f(8) should be cabined into only two "unfair or unconscionable" practices, *i.e.*, (1) identifying the communication as a debt collection letter or (2) one which tends to humiliate, threaten or manipulate the debtor. (*cf.*, Slip op. at 8-9; R. 11-12).  While those are evils the Act does address, it was error for the district court to permit those two illustrations to supplant the much broader statutory ban on "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer ...." *Id.*

The district court's unorthodox approach to statutory construction was, respectfully, incorrect.  As noted, the actual text of § 1692f provides that "the following conduct is a violation of this section:

> 8.  Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

The text the district court effectively adopted by judicial amendment is:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may ~~use his business name~~ **place any language or symbol on an envelope including personal identifying information** if ~~such name~~ **such language or symbol does not signal that it is a collection letter, or tend to humiliate, threaten or manipulate the debtor.**

(*Compare* 15 U.S.C. § 1692f(8) *with* Slip op. at 5, 6; R. 8, 9).  This is simply an incorrect reformulation of the Act based upon an over-simplified interpretation of the cases cited.

The district court stated that "every Court given the opportunity has created a 'benign language' exception to [§ 1692f(8)] …" (Slip op. at 5; R. 8 *citing Goswami v. Am. Collections Ent., Inc.*, 377 F.3d 488, 493 (5th Cir. 2004)).  But this statement is taken out of context.  *Goswami* dealt only with a claim that the words "Priority Letter" appeared on the envelope.  *Id.* at 491.  *Goswami* merely held that "it appears that all courts that have considered this issue [harmless words] have adopted a benign language exception to § 1692f(8) *that would allow for markings like "priority letter.""*  *Id.* at 494 (emphasis added).  The Court noted that "the FTC therefore interprets § 1692f(8) to allow benign or harmless language like "priority letter" to appear on the outside of the envelope."  *Id.*  An account number is nothing like "Priority Letter."  No issue about personal identifiers, account numbers or consumer

privacy was ever raised in *Goswami* – nor in <u>any</u> of the other "benign language" cases. *See* Sec. C *infra*.

Finally, the district court noted, but failed to heed the settled principle that where, as here, "Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW v. Andrews*, 534 U.S. 19, 28 (2001). The body of § 1692f(8) already contains one exception to the broad prohibition: the debt collector "may use his business name if such name does not indicate that he is in the debt collection business." There is no exception in the FDCPA that permits a collector to expose a consumer's account number or other personal identifying information.

## B. There Was No Reason to Depart from the Plain Meaning and Apply a "Benign Language" Exception to these Facts

### 1. Banning the Display of Account Numbers is Not Absurd or Difficult to Fathom

The district court held that applying the statutory ban to public disclosure of an account number assigned by a debt collector is so contrary to the legislative intent that applying § 1692f(8) as written is somehow:

- counter to the overall "object and policy" of the FDCPA;

- a "difficult to fathom" result of plain application of the FDCPA;

- "inconsistent with Congress' intention"; and

- "would defeat the purpose of 15 U.S.C. §1692f(8)."

(Slip op. at 5-6; R. 8-9). These conclusions are completely at odds with the statutory text, the stated Declaration of Purpose, and this Circuit's jurisprudence under the Act. *See* 15 U.S.C. § 1692(a)-(e); *Brown*, 464 F.3d. at 453-54; *Allen*, 629 F.3d at 367-68. The district court did not cite to any substantial authority for these conclusions, and if affirmed, the resultant holding would stand the Act on its head.

Section 1692f(8) prohibits "any language or symbol ... on any envelope ..." Congress is presumed to have chosen the words of a statute purposefully and every word is to be given effect. *TRW, Inc.* 534 U.S. at 31; *Allen*, 629 F.3d at 367. "The word 'any' has an expansive meaning..." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008). Assume for sake of argument that § 1692f(8) only prohibited debt collectors from disclosing personal identifiers, including account numbers. Such a provision is surely narrower than a statute banning "any language or symbol." There would be nothing absurd or unfathomable about such a ban – just as there is nothing absurd or unfathomable about applying the actual statutory text to ban the exposure of account numbers or other personal identifiers on envelopes passing through the hands of countless strangers in the mails.

Indeed, there are a myriad of statutes and rules that ban the disclosure (in whole or in part) of account numbers, including this Court's own Local Rules. Just a sampling includes:

17

- **Graham-Leach Bliley Privacy Act**. The account number at issue here constitutes personal identifying information under the federal Graham-Leach Bliley Privacy Act, 15 U.S.C. § 6801 et seq. ("GLBA"). Convergent, as both a "larger participant" in the consumer debt collection market and a "financial institution"[4] has "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). "Nonpublic personal information" has been broadly defined by the Federal Trade Commission ("FTC") to include "personally

---

[4]      As one of the nation's largest debt collectors, Convergent is a "larger participant" in the debt collection market as defined by the Consumer Financial Protection Bureau ("CFPB"), which oversees such businesses. 12 C.F.R. 1090.105. Debt collectors supervised by the CFPB must comply with the GLBA. *See* CFPB Examination Procedures, Debt Collection, *available at* http://files.consumerfinance.gov/f/201210_cfpb_debt-collection-examination-procedures.pdf (last visited Dec. 5, 2013). Convergent is also a "financial institution" subject to the GLBA. *Id.* The term "financial institution" means any institution the business of which is engaging in financial activities as described in 12 U.S.C. § 1843(k). 15 U.S.C. § 6809(3)(A). This includes activity that is "financial in nature or incidental to such financial activity" 12 U.S.C. § 1843(k)(1)(A). Activities that are financial in nature include: "Engaging in any activity that the [Federal Reserve] Board has determined, … to be so closely related to banking or managing or controlling banks as to be a proper incident thereto." § 1843(k)(4)(F). Closely related non-banking activities include "Activities related to extending credit" including "Collection agency services. Collecting overdue accounts receivable, either retail or commercial." 12 C.F.R. § 225.28(b)(2)(iv). *See also Stewart v. Allied Interstate, Inc.*, 2011 WL 2199716 (E.D.N.Y. June 6, 2011) ("A Federal Reserve regulation provides that debt collectors are considered 'financial institutions'," citing 12 C.F.R. § 225.28(b)(2)(iv)). There is no dispute that Convergent is a debt collector (SAC at ¶8-10; R. 27, and Answer ¶ 8-10; R. 33) whose net worth exceeds $95 million. (*See* doc. No. 49-3, p. 2 of 2).

identifiable financial information… resulting from any transaction with the consumer or any service performed for the consumer." 16 C.F.R. § 313.3(o)(1)(ii) (FTC Rule).

The unique number generated by Convergent for Douglass' account labelled "ERS Account #R-xxxx5459" resulted from the collector – debtor relationship, (and the debtor-creditor relationship before that). The account number constitutes personally identifiable financial information. (*See* expert report of Evan Hendricks at ¶ 6, 10-12; R. 636-37; *see also* Deposition of Kevin Barrows, dated Feb. 28, 2013, p. 91-92; R. 459).[5] *See also* FTC Rule, *supra* at p. 18.

- **Fair and Accurate Credit Transactions Act of 2003**. The FDCPA's sister statute, the Fair Credit Reporting Act, was amended in 2003 to require merchants to truncate credit card account numbers and expiration dates. 15 U.S.C. § 1681c(g)(1) ("FACTA" amendments). FACTA prohibits "more than the last 5 digits of the card number upon any receipt." *See Reibstein v. Rite-Aid Corp.*, 761 F. Supp. 2d 241, 245 (E.D. Pa. 2011). The statute is violated when the digits appear without truncation, irrespective of whether an account theft occurs or any harm is alleged. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010).

---

[5]    Douglass does not, of course, sue under GLBA. (*Cf.,* Slip op. at 8; R. 11). Douglass cites GLBA to help put the issue of account number disclosure in context, and to show that legislation restricting the disclosure is not absurd.

Although a receipt typically goes into the consumer's wallet or the trash can, the statute restricting the account number disclosure is not absurd.

- **Federal Rule of Civil Procedure 5.2(a),** entitled "Privacy Protection for Filings Made with the Court," provides: "a party or non-party making the filing may include only: … (4) the last four digits of the financial-account number." Pursuant to this Rule, every litigant is required to redact her account number before filing her pleading in the district court. The prohibition is prophylactic and does not require a showing that a miscreant actually misused an account number that should have been redacted.

- **Privacy Act of 1974,** 5 U.S.C. § 552a(4)(b) (West 2011) No agency shall disclose any "identifying number" without consent.

- **Privacy Rule of the Health Insurance Portability and Accountability Act,** 45 C.F.R. § 164.514(b). This Rule addresses removal of eighteen types of identifiers, including account numbers.

- **Third Circuit Local Appellate Rules.** This Court's own rules make clear that personal identifiers, including "financial account numbers," must be excluded or redacted from all documents filed with the Court. 3d Cir. L.A.R. Misc. 113.12. This Rule is so important it is incorporated into the text or commentary to no less than eight other Local Rules. *See e.g.* 3d Cir. L.A.R. 25.3, 27.2, 32.1, 32.2.

Under Convergent's theory, unless an account number is labelled as such and until one can prove how a malefactor will use his cunning, or his technology, to misuse the account number, laws such as these must fall as absurd unless a Court reforms the statute. Banning display of account numbers on or through collection envelopes is in no way absurd or inconsistent with Congress' intent.

### 2. There is no Evidence of "Unnecessary Restriction," but a Legislative Remark Does Not Trump the Statutory Text

The district court departed from the statutory text because, "Refusing to adopt the [benign language] exception would cut against Congress' purpose of protecting debtors from harassment and embarrassment while not imposing unnecessary restrictions on ethical debt collectors." (Slip op. at 7; R. 10, citing S.Rep. No. 95–382, at 1 (1977)). But this language from the Senate Report did not make it into the statute and should not have been used to defeat the statute as finally adopted. Moreover, Section 1692f, indeed the entirety of the FDCPA, "restricts" debt collection to some extent. There is a need to restrict and regulate debt collection. 15 U.S.C. § 1692(a)-(e) (Congressional findings and declaration of purpose); *Jerman*, 559 U.S. at 576-77; *Brown*, 464 F.3d at 453. The overarching purpose of the FDCPA is consumer protection, not debt collector expediency. *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008) ("[t]hough it also protects the interests of law-abiding debt collectors, the Act is primarily a consumer protection statute,

and we have consistently interpreted the statute with that congressional object in mind.").

The "unnecessary restriction" remark cited by the district court appears only in a Senate Report. The statute passed and signed into law is presumed to account for the competing interests lobbied for by the interested parties, *i.e.*, whether the enacted restrictions are "unnecessary" or not. It is not for a district court to "re-balance" the Act on a case-by-case basis. *See Heintz v. Jenkins*, 515 U.S. 291, 297 (1995) (FDCPA text trumps legislative history); *Hardt*, 560 U.S. at 252.

Apart from the rule of deference to the statutory language, this Court should also feel no need to embark on this thorny question because no claim of "unnecessary restriction" was pleaded or proven. The district court's implicit finding that adhering to the statutory text would impose some unspecified "unnecessary restriction" was only its own *ipse dixit*.

The record does not support any valid or compelling reason for the presence of the account number. Convergent hires a firm called RevSpring (formerly Dantom Systems) to print and mail their millions of form collection letters such as the one mailed to Douglass. RevSpring's Chief Financial Officer, Robert Flynn testified at deposition:

> Q [by Flitter to Flynn]: The number that you've read right above the USPS barcode, what does that correspond to?
>
> A: It corresponds to the ERS account number.

Q: And what is an ERS account number? What's that mean?

A: Well, I don't know exactly how their system works, but that's the field they send to us that corresponds to that consumer.

Q: So let me ask you this, the number that appears above the name in the window envelope, the xxxx5459, who provided that number?

A: Our client, ERS.

Q: So that number we just showed, I want to be clear, is that number visible through the envelope without having to scan any QR code?

A: For this letter, yes.

<div align="center">***</div>

Q: Why, if you know, why does the account number, the ERS account number that you just read for us, the xxxx5459, appear in the lower window above the name and the USPS barcode?

A: That's the template that the client approved.

Q: Okay. Other than the fact that the client, ERS, approved it, do you have any knowledge or reason why it's there?

A: No.

(See R. Flynn dep. at p. 30-31; R. 251). In no way would omitting the gratuitous disclosure of an account number on mail create a result "difficult to fathom" or be "inconsistent with Congress' intention." (*See* Slip op. at 6; R. 9, *citing Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 455 (1989)). Nor did the district court articulate why it would be.

While the district court's quotation from *Public Citizen* was surely accurate, the facts are far removed from those *sub judice*. In *Public Citizen*, the Supreme Court was called upon to decide whether an American Bar Association committee that reviews potential judicial nominees constituted a federal "advisory committee". A federal official must be present for every "advisory committee" meeting. The decision turned on whether the report of the ABA committee was "utilized" by the President so as to fall within the FACA coverage. *Id.* at 451-42. Finding "utilize" to be a "woolly verb" whose "contours [were] left undefined by the statute itself" the Court ultimately found that the legislation was not contemplated to cover such a private committee. *Id.* at 459-62. The Court held it would be difficult to fathom that Congress intended a truly literal application whereby a federal official would be present for every brainstorm session and every political party meeting where potential nominees are discussed. *Id.* at 462. Whatever narrow application the "difficult to fathom" rule has on those unusual facts, *id.* at 455, *Public Citizen* provides no helpful guidance here. 15 U.S.C. § 1692f(8) is narrowly tailored to address only mailings by covered debt collectors, is unambiguous (not "wooly"), carves out one exception, imposes no discernable burden, and is entirely *consistent* with the stated goal of protecting consumers and consumer privacy. 15 U.S.C. § 1692(a), (e); *See Schweizer*, 136 F.3d at 238-39; *Brown*, 464 F.3d at 453 (citing Act's expressed concern for "invasions of individual privacy.")

The district court stated there "is strong, persuasive evidence that the strict interpretation Plaintiff urges the Court to adopt would defeat the purposes of 15 U.S.C. § 1692f(8)." (Slip op. at 6; R. 9).    This statement is curious, because there was no evidence in the record that applying the Act as written would defeat the purpose of the FDCPA generally or § 1692f(8) specifically.  Convergent offered no evidence as to why it chose to place the assigned account number visibly in the window envelope in the first place.  Appellee's justification in the briefing below— that you can't tell it's an account number until you open the envelope – is immaterial and finds no support in the statute.  Convergent had to approve the format of the letter before mailing began, and the mail vendor would have removed the account number had Convergent asked.  (R. Flynn dep. at p. 26-31; R. 250-51). Convergent's choice to disregard the statute is not insignificant; Convergent mails some 8.4 million pieces of collection mail annually.  (*Id.* at 16-17; R. 247).

This Court's decision in *Dutton v. Wolpoff & Abramson*, 5 F.3d 649 (3d Cir. 1993), is instructive. The FDCPA required a disclosure in all communications that the "communication's purpose is collection of a debt and that any information furnished in response will be used for that purpose." *Id.* at 652-53.[6]  This Court had

---

[6]    Section 1692e(11) has since been amended to require slightly different consumer disclosures, but the approach to construction of mandatory provisions of the FDCPA is unaffected. See 15 U.S.C. § 1692e(11) (West 1996) ("The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral

to reconcile the express disclosure requirement of § 1692e(11) with an argument

(accepted in the Ninth Circuit) that the disclosure "this is from a debt collector" was

unnecessary. *Pressley v. Capital Credit & Collection Serv.*, 760 F.2d 922 (9th Cir.

1985). This Court in *Dutton* observed:

> The [district] court did not adhere to the text of the statute stating disclosure must be made in *all* communications. It departed from the text because it believed repetitive disclosure in otherwise nondeceptive circumstances would be unreasonably at variance with the statute's purpose "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors."

*Dutton*, 5 F.3d at 653-54. But this Court refused to create a judicial exception,

holding:

> [I]t is Congress, not a court, that decides what are the best ways to protect the interests at stake. "Although over-reaching may occur in only a few circumstances, 'Congress [may] exercise its legislative judgment to adopt a reasonable margin of safety to insure its remedial goal.'" *Id.* (quoting *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989)). As the court in *Pipiles* noted, the Pressley court's interpretation of the FDCPA changes the clear and unambiguous language "all communications" and substitutes for it the more limited phrase "some communications." *Pipiles*, 886 F.2d at 27 (emphasis in original). Absent the most compelling legislative history or the strongest practical indication that the purpose of subsection (11) would be frustrated by requiring inclusion of cautionary terms in follow-up written communications, we are unwilling to make that substitution. **It is beyond our power to deviate from the text of a statute unless its**

communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.").

**literal application would lead either to an absurd or futile result or one plainly at odds with the policy of the whole legislation.** *See U.S. v. Am. Trucking*, 310 U.S. 534, 543–44 (1940).

*Id.* at 654. (emphasis added). This sound reasoning compels reversal here.

### C. A Financial Account Number is Nothing Like "Priority Letter" or "Transmittal" or "Confidential" Printed on an Envelope

#### 1. Only the Most Innocuous Language or Markings Have Been Called "Benign"

None of the cases relied upon by the district court addressed the disclosure of personal identifiers such as account numbers that are, in a myriad of other contexts, banned from public disclosure by statutes and rules.   On the contrary, each case dealt with only the most inconsequential, generic marking on an envelope. None justifies Convergent asking this Court to add a new exception to the statutory text.

In *Goswami v. Am. Collections Enter. Inc.*, 377 F.3d 488 (5th Cir. 2004), the Fifth Circuit held that the phrase "priority letter" on the outside of an envelope was "harmless words, and such are benign." As discussed *supra,* no issue about personal identifiers or privacy were raised or decided.

The issue in *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 318-19 (8th Cir. 2004) was the presence of the debt collector's initials and the words "Personal and Confidential" and "Immediate Reply Requested" on the outside of the envelope.  The Eighth Circuit noted that to hold such language to violate § 1692f(8) would be to "create bizarre results likely beyond the scope of Congress' intent in

enacting the statute." *Id.* at 318. There was no claim in *Strand* that the envelope markings had privacy implications or exposed the consumer's account number. *Cf.*, 15 U.S.C. § 1692(a).

The other cases relied upon by the district court are similarly distinguishable, as they involve completely harmless markings or language. (Slip op. at 5; R. 8). *See Lindbergh v. Transworld Sys.*, 846 F. Supp. 175, 180 (D. Conn. 1994) ("Transmittal"); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1466 (C.D. Cal. 1991) ("PERSONAL & CONFIDENTIAL" and "Forwarding and Address Correction Requested"). It also bears note that privacy concerns and misuse of personal information through ever-evolving technology were not as paramount in the 1990's, when these early "envelope" cases were decided.

The 1988 FTC Staff Commentary relied on by the district court does not support summary judgment against Douglass. The FTC Commentary states that the "legislative purpose was to prohibit a debt collector from using symbols or language on envelopes that would reveal that the contents pertain to debt collection—not to totally bar the use of harmless words or symbols on an envelope." (Slip op. at 7; R. 10, quoting Statements of General Policy or Interpretation Staff Commentary on the FDCPA, 53 Fed. Reg. 50097–02, 50099 (Dec. 13, 1988)). Nothing in the FTC Commentary remotely suggests that the Act permits the debt collector's public

28

disclosure of personal identifiers, such as an assigned account number, through the window envelope. Only "harmless words or symbols" are addressed.

In this Circuit, the FTC Commentary is only authority if persuasive. *Brown*, 464 F.3d at 455 and n.4. The Commentary nowhere speaks to privacy concerns, and cannot be read to condone the gratuitous inclusion of an account number on mailed correspondence. Such would be so counter to the Act's text and stated declaration of purpose, and entitled to no weight. *Brown*, 464 F.3d at 455-56. Absent demonstrable absurdity, the collector's arguments in favor of an added exception "are properly addressed to Congress..." *Jerman*, 559 U.S. at 604; *Dutton*, 5 F.3d at 656-57.

### 2. Section 1692f(8) Bans "Any Language or Symbol", not Just Two Narrow Types of Language or Symbols

Despite Section 1692f(8)'s broad ban on "*any* language or symbol," the lower court hoisted its own, much narrower, reading of the Act's prohibition. According to the district court, a defendant "only" violates Section 1692f(8) if the markings on an envelope "(1) identify the communication as a debt collection letter; or (2) tend to humiliate, threaten, or manipulate" the debtor. (Slip op at 5, 11; R. 8, 14, *citing Goswami,* 377 F. 3d at 493). Suddenly, Congress' broad choice of banned conduct has been circumscribed by a district court to only <u>two</u> narrow categories.

The statement from *Goswami* was not intended to be all-inclusive or to exclude other claims which might fall under the ban of "any language or symbol"

on an envelope. Rather, the statement was made by the Fifth Circuit in order to carve-out an exception for the truly innocuous phrase "priority letter," and the Court used the phrase "such as markings that would signal ..." to show illustrations. *Id.* *Goswami* must be read against its clearly distinguishable facts. *See E.I. DuPont De Nemours and Co. v. U.S.*, 460 F.3d 515, 530 (3d Cir. 2006) (courts "must parse the precedent in light of the facts presented and the rule announced"), *vac. on other grounds*, 551 U.S. 1129 (2007).

By narrowing Section 1692f(8)'s broad ban to only two (2) types of markings, the district court took a dangerously strict and improper reading of the Act. One need not think long to postulate as to where this slippery slope might lead. A drivers' license number, mother's maiden name, date of birth, or other sensitive information potentially in a debt collector's hands could be freely exposed under the district court's cramped reading of Section 1692f(8). If account numbers are "benign", as Convergent urged and the district court held, then all of these private details and personal identifiers are fair game for exposure. There has been no showing of why account numbers even need to appear: at best, it is for the convenience of the debt collector – which Congress did not protect; and at worst, it is cavalier disregard for the consumers' privacy, which the Act does protect.

Convergent claimed below that Ms. Douglass' identity was not stolen, and the account number, if read, cannot be used unless the letter is opened. But liability

does not depend on whether as a *result* of the violation, a consumer's identity is actually stolen or personal identifying information actually misused. The provision is prophylactic, regulating disclosures at the source, not based upon resultant harm in any individual case. Deterrence of a potentially harmful disclosure is a proper goal of the Act as well. *See Jacobson*, 516 F.2d at 91; *see also Allen*, 629 F.3d at 368 (declining to give a narrow reading to the statutory definition of "communication" which would "undermine the deterrent effect of strict liability" under § 1692f). The fortuity that Ms. Douglass' finances were not compromised, beyond the public disclosure, does not absolve Convergent under the flawed aegis of "benign language," or otherwise. *See id.*

### 3. The Account Number was Unredacted and Visible to the Naked Eye; it Cannot be Labeled a "Jumble" or Compared to a Scannable Bar Code

The district court's reliance on *Marx v. Gen. Revenue Corp.,* 668 F.3d 1174 (10th Cir. 2011) is misplaced. (Slip op. at 9; R. 12). In *Marx,* the consumer sued under the FDCPA when a debt collector sent a fax to her workplace that bore an "ID number" representing Marx's account number. *Id.* at 1176. *Marx* dealt with the Act's ban on communications with third-parties in connection with collection of a debt. 15 U.S.C. § 1692c(b). The case turned on the issue of whether the fax was a "communication" under § 1692a(2), so as to be covered by the FDCPA. Mr. Marx presented no evidence or witnesses to testify about whether they inferred the fax was

a collection letter. *Marx* at 1177. Ultimately, the factfinder concluded the fax did not "imply a debt" and was thus not a "communication" regulated by the Act. *Id.* at 1177-78. This finding was affirmed on appeal. Whether or not the account number displayed in *Marx* "implied a debt" is not the issue here because § 1692f(8) is a broad ban, not limited only to language that implies a debt. It also bears note that if, *arguendo*, the issue here were whether the collection fax in *Marx* was a "communication," *Marx* would be in considerable tension with this Court's jurisprudence on the issue. *Compare Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 267 (3d Cir. 2013) (noting the "broad gloss" to be applied in interpreting "communication", which "need only convey 'information regarding a debt'."); *Allen*, 629 F.3d at 368 (applying broad reading to definition of "communication" under § 1692a(2)).

The court below used the *Marx* court's phrase "jumble of numbers" to describe the account number at issue here. (Slip op. at 9; R. 12). But that same imprecise label can be applied to a social security number if not hyphenated (e.g. 234567890), a bank account number, unlisted home telephone number, driver's license number, payroll identification number, or any other number that can be personal identifying information if placed on a collection envelope without additional description. On the contrary, the numbers are unique and meaningful in sequence.

The "jumble" phrase also appears in *Waldron v. Professional Mgmt. Serv.*, 2013 WL 978933, *5 (E.D. Pa. Mar. 13, 2013). There, the court referred *not* to the account number appearing through the window, but to the more complex printout of data that appears when a "QR Code" (the square digitized box) is scanned with a "smart" cell phone (*e.g.,* an iPhone). That so-called "jumble" visible when the QR Code is scanned is replicated at page 5 of this brief, *supra*. Compare it to the account number above Douglass' name appearing on the letter visible through the window envelope, depicted on page 3. If those numbers have meaning in their sequence, they can hardly be said to be a "jumble."[7] But *Waldron* only raised a claim about the disclosure that occurs when the square QR Code is scanned, and did not challenge the presence of an account number visible through the window. *Waldron*, 2013 WL 978933 at *3. The court below appeared at times to conflate the two issues, suggesting at one point that the "crux of plaintiff's complaint [is] (1) the account number that is revealed through the plastic window of the envelope *when the QR Code is scanned.*" (Slip op. at 8; R. 11) (emphasis added). Yet, the SAC and the summary judgment briefing made quite clear that Douglass complained of both the QR Code and the account number plainly visible through the window. (*See*

---

[7]    "Jumble" is defined as "a mass of things mingled together without order of plan" or "to mix into a confused or disordered mass." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, 654 (1987).

SAC, ¶ 2 ("through the window, the consumer's account number is displayed, and there is a readable symbol …"); ¶ 14 (same); R. 26-28, *see also* Plaintiff's Opposition to Motion for Summary Judgment (Introductory Statement: "through the window of the envelope there is visible the account number assigned to the consumer recipient."); R. 82, 85).

There was also no basis to call the account number displayed the "functional equivalent of a bar code." (Slip op. at 11; R. 14). While one necessarily needs to scan a bar code (or a QR Code) with a device to uncover encrypted information, Ms. Douglass' account number was clearly displayed for all to see with the naked eye, without the need for any scanning device. (*See* p. 3, *supra* and R. 99, 111). This salient fact also distinguishes the QR Code case, *Waldron*, upon which the district court relied, where, as noted, no allegations about a clearly visible account number were made.[8]  Besides, if personal information other than the debtor's name and address is revealed, the bar code probably should not be on the envelope either. Section 1692f(8) prohibits "any language or symbol" so there is no exception for a bar code that would reveal more than name and address.

---

[8]    As noted in n. 2 *supra*, Douglass does not challenge on appeal the ruling as to the use of the QR Code. This appeal concerns only Convergent's placement of her account number visibly in the window.  However, the data revealed by the QR Code is of record, and is instructive.

Nonetheless, the district court was correct to note that the account number at issue here is directly tied to a debtor-creditor relationship, *i.e.*, the "debt she owes to T-Mobile". (Slip op. at 2; R. 5). The letter itself confirms that the account number in the window "corresponds to the [Convergent] account number". (See R. 99; *see also* R. Flynn dep. at p. 29-30; R. 250-51). This is the live, active account number that Convergent assigned, in contrast to the closed account number associated with the underlying phone bill. Convergent should not expose these account numbers on the millions of pieces of consumer correspondence it places in the mails each year.

**D. The District Court Erred in Weighing Competing Evidence at Summary Judgment**

While not necessary to sustain her case, there is evidence that the account numbers exposed have potential for abuse and are not harmless.

Douglass offered the declaration of an expert, Evan Hendricks, in opposition to summary judgment. Mr. Hendricks is a recognized privacy expert. (*See* Hendricks Report at p.5-7; R. 639-41). Mr. Hendricks opines that the presence of the account number (through the QR Code) violates existing conventions of privacy and is not innocuous. (*Id.* at ¶ 6-13; R. 636). Hendricks attests that an account number constitutes "nonpublic personal information" under the Graham-Leach-Bliley Act, and should not be disclosed to the public. (*Id.* at ¶ 10-12; R. 636-37).

Appellee Convergent retained its own expert, Kevin Barrows. Mr. Barrows' area of expertise is identity theft. While Mr. Barrows was of the opinion that the

account number could not be useful to an identity thief, Barrows admitted that he would not recommend that *his* clients place a customer's account number on the outside of their envelope. (Deposition of Kevin Barrows, dated Feb. 28, 2013, p. 91-92; R. 459).   Barrows acknowledged that an account number can be identifying information. (*Id.*).  Mr. Barrows agreed such information should not be placed on an envelope traveling through the mails. "It's unnecessary information and any unnecessary information, whether it's going to be used or not … I would not recommend that it be placed on the outside of an envelope." (Barrows dep. at p. 93-94; R. 460).

> Q [by Mr. Flitter]:  But if you were counseling a company, the company came to you and said we're mailing out 8 million pieces of mail a year to people we think owe us money, do you recommend we put their account number on the outside of the envelope, what would you tell them? [Objections]
>
> A:  I would definitely not recommend they do that, no.

(Barrows dep. at p. 96; R. 460).[9]

---

[9]    Convergent mails more than 8 million pieces a year. (Flynn dep. at p. 17; R. 247).  The collection industry mails about one billion pieces a year, as statistics reveal 30 million consumers, or 14% of American adults, have debt that was subject to the collections process.  Federal Reserve Bank of New York, *Quarterly Report on Household Debt and Credit* (May 2012), *available at* http://www.newyorkfed.org/research/national_economy/householdcredit/DistrictReport_Q12012.pdf.

One may reasonably infer that Convergent's expert would not be so emphatically reluctant to have a debt collector expose the consumers' account number on an envelope to be mailed if it were truly benign or innocuous. At summary judgment, inferences are to be resolved in favor of the non-movant. *See Anderson v. Wachovia Mortgage*, 621 F.3d 261, 267 (3d Cir. 2010).

While no "benign language" exception should be adopted in light of the pellucid statutory directive, and as applied to these facts, Convergent has not established that display of the consumer's financial account number through the glassine window is "benign" as a matter of law. Moreover, the burden of proving entitlement to a special exception from a statute rests with the one who asserts the exception. *See FTC v. Morton Salt Co.*, 334 U.S. 37, 44 (1948); *Thomas v. George, Hartz*, 525 F.3d 1107, 1110 (11th Cir. 2008). The district court compounded the error in adding a "benign language" exception to § 1692f(8) by not placing the associated burden of proof upon Convergent.

Moreover, at summary judgment, credibility determinations by the trial judge are improper. The district court should not weigh competing expert reports. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 841-42 (3d Cir. 1990). The district court erred by weighing the credibility of the two experts, and concluding: "The Court is not persuaded that Hendricks' declaration advances Plaintiff's claim. The Court is more

convinced by Defendant's expert, Kevin Barrows..." (Slip op. at 10; R. 13). *See id.* If the Court were not going to ban use of the account number outright on the strength of § 1692f(8) – and it should – but rather adopt a benign language exception, then the determination of whether exposure of account numbers is "benign" should be left to the jury. *See Davis v. Baron's Creditors Serv. Corp.*, 2001 WL 1491503 (N.D. Ill. Nov. 20, 2001) (where the challenged name was "not as benign as those cases [collector] relies on", the issue of whether § 1692f violated *held* a jury question).

## VIII. <u>CONCLUSION</u>

The broad language of 15 U.S.C. §1692f(8) which bans display of a consumer's collection account number through the window of a debt collector's envelope is a proper exercise of legislative judgment to which the Court must defer. There is no absurd result that would justify ignoring the statutory text in favor of a "benign language" exception. To the extent the Court chooses to adopt a judicial exception, it must be applied narrowly and the gratuitous display of a debtor's account number is not benign. Finally, it was error for the district court to weigh competing evidence on point. For these reasons, and all those set forth above, the judgment of the district court should be reversed, and this matter remanded for further proceedings.

## CERTIFICATION OF BAR MEMBERSHIP

I, Cary L. Flitter, hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.


Date: __12/06/13__                   _/s/ Cary L. Flitter_____
                                     CARY L. FLITTER
                                     FLITTER LORENZ P.C.
                                     450 N. Narberth Avenue, Suite 101
                                     Narberth, PA 19072
                                     (610) 822-0782

                                     Attorney for Appellant

## CERTIFICATION OF BAR MEMBERSHIP

I, SaraEllen Hutchison, hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.


Date: __12/06/13__                   _/s/ SaraEllen Hutchison_____
                                     SARAELLEN HUTCHISON
                                     LAW OFFICE OF SARAELLEN
                                     HUTCHISON, PLLC
                                     1752 N.W. Market Street #915
                                     Seattle, WA 98107
                                     (206) 529-5195

                                     Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed.R.App.P. 32(a)(7)(C), the undersigned counsel of record for Plaintiff/Appellant, Courtney Douglass certifies that the foregoing brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 32(a)(5)-(7) and Third Circuit Local Appellate Rules 32.1, 32.2 and 28.5. Exclusive of those portions exempted pursuant to Fed.R.App.P. 32(a)(7)(B), the foregoing brief contains 9872 words.

Date:    12/06/13                    /s/ Cary L. Flitter
                                     CARY L. FLITTER
                                     Attorney for Appellant

## CERTIFICATE OF BRIEF TEXT

I, CARY L. FLITTER, hereby certify that the text of the E-Brief and Hard Copies of the foregoing BRIEF OF APPELLANT are identical.

Date:    12/06/13                    /s/ Cary L. Flitter
                                     CARY L. FLITTER

## <u>CERTIFICATION OF VIRUS CHECK</u>

I, CARY L. FLITTER, hereby certify that a virus check was performed on the

PDF file of the foregoing BRIEF OF APPELLANT prior to electronic filing using

ESET NOD32 AntiVirus.


Date:  __12/06/13__          */s/ Cary L. Flitter* _____
                             CARY L. FLITTER

## **CERTIFICATE OF SERVICE**

I, Cary L. Flitter, do hereby certify that electronic copies will be sent by email on December 6, 2013, and will cause two copies of the foregoing Brief of Appellant and Appendix thereto to be overnighted on December 9, 2013, upon the following counsel as follows:

<div align="center">

Ed Walton, Esquire
BUSH & RAMIREZ, LLC
5615 Kirby Drive, Suite 900
Houston, TX 77005

Richard Perr, Esquire
FINEMAN, KREKSTEIN & HARRIS, P.C.
Mellon Bank Center
1735 Market Street, Suite 600
Philadelphia, PA 19103
**Attorney for Appellee**

</div>

Date:   12/06/13          _/s/ Cary L. Flitter_____
                          CARY L. FLITTER

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### NO.  13-3588

---

**COURTNEY DOUGLASS, individually and on
behalf of all others similarly situated**
                                    **Appellant,**

v.

**CONVERGENT OUTSOURCING,**
                                    **Appellees.**

---

**On Appeal from the United States District Court
for the Eastern District of Pennsylvania
in Civil Action No. 12-cv-1524(JHS)**

---

### APPENDIX VOLUME I
### (R. 1 - R. 15)

---

Cary L. Flitter
Theodore E. Lorenz
Andrew M. Milz
FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

Attorneys for Appellant Courtney
Douglass

| **VOLUME I** | |
|---|---|
| Notice of Appeal (ECF No. 64) | R. 1 – R. 2 |
| Summary Judgment Order (ECF No. 63) | R. 3 |
| Summary Judgment Opinion (ECF No. 62) | R. 4 – R. 15 |
| **VOLUME II** | |
| Docket Sheet | R. 16 – R. 25 |
| Second Amended Complaint (ECF No. 29) | R. 26 – R. 31 |
| Answer to Second Amended Complaint (ECF No. 32) | R. 32 – R. 36 |
| Report of Rule 26(f) Meeting with Proposed Progression of Dates (ECF No. 18) | R. 37 – R. 42 |
| Notice by Convergent of Filing Disclosure of Expert Testimony (ECF No. 33) | R. 43 – R. 48 |
| Convergent's Motion for Summary Judgment (ECF No. 36) | R. 49 – R. 80 |
| Plaintiff's Opposition to Defendant's Motion for Summary Judgment (ECF No. 52) | R. 81 – R. 127 |
| Convergent's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (ECF No. 54) | R. 128 – R. 139 |
| Plaintiff's Motion for Leave to Permit Sur-Reply Brief (ECF No. 56) | R. 140 – R. 147 |
| Convergent's Response to Plaintiff's Motion for Leave to Permit Sur-Reply Brief (ECF No. 58) | R. 148 – R. 149 |
| Plaintiff's Sur-Reply Contra Summary Judgment (ECF No. 60) | R. 150 – R. 154 |
| Convergent's Reply to Plaintiff's Sur-Reply Contra Summary Judgment (ECF No. 61) | R. 155 – R. 158 |
| Deposition Transcript of Courtney Douglass | R. 159 – R. 171 |
| Deposition Transcript of Lisa Burton | R. 172 – R. 242 |
| **VOLUME III** | |
| Deposition Transcript of Robert Flynn | R. 243 – R. 293 |
| Deposition Transcripts of Anne Carlson (Vol. 1 & 2) | R. 294 – R. 351 |
| Deposition Transcripts of Jeffrey Hunter (Vol. 1 & 2) | R. 352 – R. 401 |
| Deposition Transcript of Adam Bury | R. 402 – R. 436 |
| Deposition Transcript of Kevin Barrows | R. 437 – R. 495 |
| Deposition Transcript of Evan Hendricks | R. 496 – R. 634 |
| Declaration of Evan Hendricks | R. 635 – R. 642 |
| Declaration of Kevin Barrows | R. 643 – R. 646 |
| QR Code Scan | R. 647 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY DOUGLASS<br>*on behalf of herself and all others similarly situated,*<br><div align="center">Plaintiff</div><br><div align="center">vs.</div><br>CONVERGENT OUTSOURCING, f/k/a/<br>ER SOLUTIONS, INC.<br><div align="center">Defendant</div> | NO.  12-1524(JHS)<br><br><br><br><br><br>CLASS ACTION |

## NOTICE OF APPEAL

Notice is hereby given that Courtney Douglass, the Plaintiff in the above named case, hereby appeals to the United States Court of Appeals for the Third Circuit from the Court's Order and Decision dated August 6, 2013, entered on the docket on August 6, 2013, granting Defendant's Motion for Summary Judgment and entering Judgment in favor of the Defendant.

Respectfully submitted:

Date:  8/23/13

/s/ Cary L. Flitter
CARY L. FLITTER
Attorney for Plaintiff

FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY DOUGLASS<br>*on behalf of herself and all others similarly situated,*<br><br>　　　　　　　　Plaintiff<br><br>　vs.<br><br>CONVERGENT OUTSOURCING, f/k/a/<br>ER SOLUTIONS, INC.<br>　　　　　　　Defendant | NO. 12-1524(JHS)<br><br><br><br><br><br>CLASS ACTION |

## CERTIFICATE OF SERVICE

I, CARY L. FLITTER, do hereby certify that I did mail a copy of the Notice of Appeal,

via first class mail, to the following:

Richard Perr, Esquire
FINEMAN, KREKSTEIN & HARRIS, P.C.
Mellon Bank Center
1735 Market Street, Suite 600
Philadelphia, PA 19103

Ed Walton, Esquire
BUSH & RAMIREZ, LLC
5615 Kirby Drive, Suite 900
Houston, TX 77005

**Attorneys for Defendant**

Honorable Joel H. Slomsky
United States District Court
Room 5614, United States Courthouse
601 Market Street
Philadelphia, PA 19106
**Trial Judge**

DATE:  8/23/13

/s/ Cary L. Flitter
CARY L. FLITTER

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COURTNEY DOUGLASS,

               Plaintiff,

    v.

CONVERGENT OUTSOURCING,

               Defendant.

CIVIL ACTION
NO. 12-1524

## ORDER

**AND NOW**, this 6th day of August 2013, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 36), Plaintiff's Response in Opposition (Doc. No. 52), Defendant's Reply in Further Support of the Motion (Doc. No. 54), the arguments of counsel at the hearing held on May 29, 2013, Plaintiff's Sur-Reply in Further Opposition to the Motion (Doc. No. 60), Defendant's Response to the Sur-Reply in Further Support of the Motion (Doc. No. 61), and in accordance with the Opinion of the Court issued this day, it is **ORDERED** as follows:

1.      Defendant's Motion for Summary Judgment (Doc. No. 36) is **GRANTED**.

2.      Judgment is entered in favor of Defendant.

3.      Any outstanding motions are **DENIED AS MOOT**.

4.      The Clerk of Court shall close this case for statistical purposes.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.

R. 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COURTNEY DOUGLASS,

               Plaintiff,

    v.

CONVERGENT OUTSOURCING,

               Defendant.

CIVIL ACTION
NO. 12-1524

## OPINION

**Slomsky, J.**                                                 **August 6, 2013**

## I.   INTRODUCTION

The Fair Debt Collection Practices Act (the "FDCPA") prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff Courtney Douglass, a resident of Pottstown, Pennsylvania, was sent a debt collection letter by Defendant Convergent Outsourcing.[1] Plaintiff contends that the envelope which contained the debt collection letter violates a section of the FDCPA that bars debt collectors from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8).

Defendant has filed a Motion for Summary Judgment, arguing that Plaintiff's claim should be dismissed because the language on the envelope is "benign," and therefore not in

---

[1] The Complaint was filed against ER Solutions, Inc. ER Solutions is now known as Convergent Outsourcing. (Doc. No. 29 at 2.)

1

violation of § 1692f(8). For reasons that follow, Defendant's Motion for Summary Judgment will be granted.

## II.    BACKGROUND

On or about May 16, 2011, Defendant sent a letter to Plaintiff attempting to collect payment on a debt of $802.04 that Plaintiff had incurred from T-Mobile USA for cell phone service. (Doc. No. 29 at 2.) The envelope containing the letter had a clear plastic window. (<u>Id.</u> at 2–3.) Through the window, the following were visible: (1) Plaintiff's name and address; (2) an internal account number Defendant used to identify Plaintiff ("■■0549"); and (3) a Quick Response ("QR") code.[2] (Doc. No. 52 at 4–5.) The QR code contains encoded information, and can be "scanned" by certain devices, such as a smartphone, to decode the information and reveal its contents. (<u>Id.</u> at 5.) The QR code on Plaintiff's envelope, if scanned by such a device, would reveal the following information:

ATERSO01,#K#    ,0549, Courtney Douglass, <u>228 King St Apt 3</u>, Pottstown, PA, <u>194645515280</u>,R241,802.04

(Doc. No. 36 at 1 (underline in original).) In the string of numbers, "■■0549" is Plaintiff's account number with Convergent Outsourcing, and "802.04" represents the debt she owed to T-Mobile. (Doc. No. 36 at 6.) Plaintiff's address is 228 King St., Apt. 3, Pottstown, PA 19464. (Doc. No. 52 at 4.) Defendant uses the QR code to efficiently sort mail that is returned to the sender. (Mot. Hr'g Tr. at 11:18–12:7, May 29, 2013.)

On March 26, 2012, Plaintiff filed the Complaint (Doc. No. 1), alleging that Defendant has violated the literal meaning of 15 U.S.C. § 1692f(8) by including the QR code and account number in a location visible through the clear plastic window of the envelope. On April 27, 2012, Plaintiff amended the Complaint. (Doc. No. 2.) On November 9, 2012, the Complaint

---

[2] For a visual example of a QR code, see <u>Waldron v. Professional Medical Management</u>, No. 12-1863, 2013 WL 978933, at *1 (E.D. Pa. Mar. 13, 2013).

2

R. 5

was amended a second time. (Doc. No. 29.) Defendant filed its Answer to the Second Amended

Complaint on November 26, 2012. (Doc. No. 32.)

On November 30, 2012, Defendant filed the Motion for Summary Judgment, arguing that

the information visible through the window of the envelope is subject to a "benign language"

exception, and therefore including it on the face of the envelope does not violate § 1692f. (Doc.

No. 36.) On May 15, 2013, Plaintiff filed a Response in Opposition to the Motion[3] (Doc. No.

52), and on May 21, 2013, Defendant filed a Reply (Doc. No. 54). On May 29, 2013, the Court

held a hearing on the Motion.[4] The Motion is now ripe for disposition.

## III.   STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this

decision, the court must determine "whether the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits show that there is no genuine issue of material

fact and whether the moving party is therefore entitled to judgment as a matter of law."

Macfarlan v. Ivy Hill SNF, LLC., 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986)). A disputed issue is "genuine" only if there is a sufficient

evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v.

Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477

---

[3] Defendant filed the Motion for Summary Judgment on November 30, 2012, and an Amended
Scheduling Order entered by the Court on January 11, 2013 (Doc. No. 47) allowed Plaintiff to
respond by May 15, 2013.

[4] On June 11, 2013, Plaintiff filed a Sur-Reply in Further Opposition to the Motion. (Doc. No.
60.) On June 17, 2013 Defendant filed a Response to the Sur-Reply in Further Support of the
Motion. (Doc. No. 61.)

R. 6

U.S. 242, 248 (1986)). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v. York Papers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247-49.

In deciding a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the non-moving party. Macfarlan, 675 F.3d at 271; Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Anderson, 477 U.S. at 255. If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. Liberty Lobby, 477 U.S. at 248. In ruling on Defendant's Motion for Summary Judgment, a mere scintilla of evidence in support of Plaintiff's position is insufficient. Id. at 252. Enough evidence must exist such that a jury could reasonably find for Plaintiff. Id. Plaintiff cannot merely rely upon assertions or speculation. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985). If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted. Bouriez, 585 F.3d at 771.

R. 7

## IV.   ANALYSIS

### A.   The "Benign Language" Exception

The FDCPA bars debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. In furtherance of this objective, debt collectors are prohibited from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8).

Every court given the opportunity has created a "benign language" exception to this subsection, under which a defendant only violates § 1692f(8) if the markings on the envelope "signal that it is a debt collection letter, [or] tend to humiliate, threaten, or manipulate [the] debtor[]." Goswami v. Am. Collections Enters., Inc., 377 F.3d 488, 493 (5th Cir. 2004); see Waldron v. Prof'l Medical Mgmt., No. 12-1863, 2013 WL 978933, at *3 (E.D. Pa. Mar. 13, 2013);[5] see also Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 318–19 (8th Cir. 2004); Lindberg v. Transworld Sys., 846 F. Supp. 175, 180 (D. Conn. 1994); Masuda v. Thomas Richards & Co., 759 F. Supp. 1456, 1466 (C.D. Cal. 1991).

Plaintiff urges this Court to eschew the "benign language" exception, and construe § 1692f(8) literally to mean that no language or symbols other than what is explicitly permitted by the statute can appear on the envelope. In support of her position, Plaintiff cites TRW v. Andrews, 534 U.S. 19, 28 (2001), where the U.S. Supreme Court reasoned that "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to

---

[5] The facts of Waldron are almost identical to the facts of this case. The only difference is that here, the QR code and Plaintiff's account number are visible through the envelope window, whereas only the QR code was visible through the envelope window in Waldron. Plaintiff's counsel in this case also represented the plaintiff in Waldron.

be implied, in the absence of evidence of a contrary legislative intent." (Doc. No. 52 at 7

(emphasis added).) Because 1692f(8) explicitly identifies one exception to the general rule

barring extraneous markings — "a debt collector may use his business name if such name does

not indicate that he is in the debt collection business" — Plaintiff contends that this Court should

refrain from engrafting any other exceptions onto the statute. (Doc. No. 52 at 7 (citing TRW, 534

U.S. at 28).)

     While Plaintiff's argument rests upon the important principle that courts should primarily

look to the plain meaning of the text when engaging in statutory interpretation, this Court is not

persuaded to adopt Plaintiff's position here. As the courts that have adopted the "benign

language" exception point out, there is strong evidence of "a contrary legislative intent" to only

bar practices by debt collectors that "signal that it is a debt collection letter, [or] tend to

humiliate, threaten, or manipulate [the] debtor[]." Goswami, 377 F.3d at 493. Moreover, a court

can also consider the overall "object and policy" of the statute. Disabled in Action of Pa. v. Se.

Pa. Transp. Auth., 539 F.3d 199, 210 (3d Cir. 2008) (citation and internal quotation marks

omitted). Indeed, "[l]ooking beyond the naked text for guidance is perfectly proper when the

result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress'

intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and

does not preclude consideration of persuasive evidence if it exists.'" Pub. Citizen v. U.S. Dep't

of Justice, 491 U.S. 440, 455 (1989) (quoting Boston Sand & Gravel Co. v. United States, 278

U.S. 41, 48 (1928)).

     There is strong, persuasive evidence that the strict interpretation Plaintiff urges the Court

to adopt would defeat the purpose of 15 U.S.C. § 1692f(8). The Senate Report on the FDCPA

states that the purpose of the bill is to "protect consumers from a host of unfair, harassing, and

deceptive debt collection practices <u>without imposing unnecessary restrictions on ethical debt collectors.</u>" S. Rep. No. 95-382, at 1 (1977) (emphasis added). Federal Trade Commission Staff Commentary on the Act states that "[t]he legislative purpose was to prohibit a debt collector from using symbols or language on envelopes that would reveal that the contents pertain to debt collection — <u>not to totally bar the use of harmless words or symbols on an envelope.</u>" Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02, 50099 (Dec. 13, 1988) (emphasis added).

Refusing to adopt the exception would cut against Congress' purpose of protecting debtors from harassment and embarrassment while not imposing unnecessary restrictions on ethical debt collectors. Therefore, this Court will follow all other courts that have confronted this question, and adopt the "benign language" exception. See <u>Waldron</u>, 2013 WL 978933, at *3.

**B.      Whether the "Benign Language" Exception Applies is a Question of Law**

The <u>Waldron</u> decision illustrates that every court to address whether the "benign language" exception applies has held it to be a question of law for the court to decide, not a question of fact for the jury. <u>Waldron</u>, 2013 WL 978933, at *3; <u>see</u> <u>Strand</u>, 380 F.3d at 319 ("As a matter of law . . . we conclude the language and symbols were benign because they did not, individually or collectively, reveal the source or purpose of the enclosed letters."). The Court agrees with this persuasive authority. The Court therefore must decide whether the language and symbol Plaintiff complains of are benign as a matter of law. Fed. R. Civ. P. 56(a).

**C.      The Language, Numbers, and Symbols are Benign**

Plaintiff argues that even if this Court adopts the "benign language" exception, it should still prevail because the information visible through the plastic window of the envelope is not

benign. (Doc. No. 52 at 13–14.) Two pieces of information form the crux of Plaintiff's

Complaint: (1) the account number that is revealed through the plastic window of the envelope

when the QR code is scanned; and (2) the amount due that Plaintiff alleges is revealed by

scanning the QR code.[6]

### 1.    The Account Number

Plaintiff contends that the visibility of the account number is not benign because it is

"nonpublic personal information" and its disclosure could result in an increased risk of identity

theft. (Doc. No. 52 at 13.) In support of this position, Plaintiff characterizes the account number

as a "financial account number," and argues that the privacy standards laid out in the Gramm-

Leach-Bliley Privacy Act, 15 U.S.C. § 6801 et seq., provide a guide that this Court should follow

in determining whether the disclosure of the account number is benign. (Doc. No. 60 at 1-2.)

Here, however, Plaintiff alleges a claim under the FDCPA, not the Gramm-Leach-Bliley

Privacy Act. For the purposes of this case, the standards of the FDCPA, and the judicial

interpretation of it, provide the appropriate guidance. The purpose of the section of the FDCPA

at issue here is not to prevent identity theft; rather, it is to put an end to a different kind of

mischief — namely, the use of "unfair or unconscionable" practices by debt collectors that:

(1) identify the communication as a debt collection letter; or (2) "tend to humiliate, threaten, or

---

[6] At the hearing on this Motion, Defendant raised a question about whether the information contained in the QR code can even be considered as appearing "on the face" of the envelope, because federal law makes it illegal for someone to scan a QR code on an envelope. (Mot. Hr'g Tr. at 4:22–25.) For this reason, Defendant contends that the QR code should not be viewed as appearing "on the face" of the envelope.

It is indeed illegal for someone to take a "letter . . . before it has been delivered to the person to whom it was directed, with design to . . . pry into the business or secrets of another." 18 U.S.C. § 1702. However, because the Court concludes in this Opinion that the information revealed in the QR code is benign, the Court need not reach the question of whether it appears "on the face" of the envelope.

manipulate" the debtor. 15 U.S.C. § 1692f; Goswami, 377 F.3d at 493. The exposure of the account number on the face of an envelope is not indicative of either unlawful practice.

In Marx v. General Revenue Corp., the Tenth Circuit held that an account number on a facsimile sent to a debtor's employer could not be "reasonably construed to imply a debt." 668 F.3d 1174, 1177 (10th Cir. 2011). It characterized the account number as "a jumble of numbers, designed for internal identification purposes, the functional equivalent of a bar code."[7] Id. at 1183.

In Waldron, a case similar to the instant case, the court held that an account number revealed by scanning a QR code through an envelope window did not identify the communication as a debt collection letter. Waldron, 2013 WL 978933, at *6. The court reasoned that the "'jumble' of letters and numbers that comprise Plaintiff's account number . . . reveals nothing to a person without the means to decipher it." Id. (quoting Marx, 668 F.3d at 1183). Therefore, since the "gravamen of a § 1692f(8) violation is that the challenged symbol clearly refers to a debt," and there is "no such reference" here, the presence of the account number does not violate the statute. Id. at *6 (quoting Marx, 668 F.3d at 1183).

The Court finds the reasoning of these two cases persuasive. The mere presence of an account number does not show that the communication is related to a debt collection. Marx, 668 F.3d at 1177; Waldron, 2013 WL 978933, at *5. It also could not reasonably be said to "humiliate, threaten, or manipulate" the debtor. Goswami, 377 F.3d at 493. As such, the

---

[7] At issue in Marx was a different provision of the FDCPA from the one in this case. The Marx court interpreted 15 U.S.C. § 1692c(b), which provides that a "debt collector may not communicate, in connection with a collection of any debt, with a person other than the consumer." Nevertheless, the reasoning of Marx is applicable to this case.

presence of the account number, either in the QR code or on the face of the envelope, does not violate § 1692f(8).[8]

Moreover, even if the Court were to adopt identity theft as a factor in the analysis, Plaintiff has not established that the risk of identity theft is anything more than mere "assertion[] or speculation." Gans, 762 F.2d at 341. In support of her contention, Plaintiff submitted a declaration by Evan Hendricks, an expert in the field of identity theft. (Doc. No. 52-6.) Hendricks, however, does not explain how the disclosure of this account number could lead to identity theft. He merely explains that protecting sensitive personal information — such as financial account numbers — is important, that there are a number of laws that protect this kind of information, and that identity thieves can be "persistent" and "industrious." (Doc. No. 52-6 at 2–4.) The Court is not persuaded that Hendricks's declaration advances Plaintiff's claim. The Court is more convinced by Defendant's expert, Kevin Barrows, who stated in his report that the account number is "an internal file number for a collection agency which cannot reasonably lead to identity theft." (Doc. No. 36- 2 at 4.)

---

[8] At the hearing on this Motion, Plaintiff's counsel argued that this case is different from Waldron because here, unlike in Waldron, the account number appears on the face of the envelope. (Mot. Hr'g Tr. 24:5–25:9.) The Court disagrees.

First, the Waldron court assumed for the sake of argument that "there is no material difference between displaying the [QR code] and the embedded data itself on the collection envelope's face." Waldron, 2013 WL 978933, at *5. It still held that the "embedded data is a seemingly random series of letters and numbers that only Defendant can decipher [and] its inclusion on the envelope's face thus does not violate the [FDCPA]." Id.

Second, although the Marx analysis focused on a different subsection of the FDCPA, the reasoning is equally applicable here. In that case, the account number did appear on the face of the communication sent to the plaintiff's workplace. Marx, 668 F.3d at 1176. The court held that the mere presence of the account number on the communication did not "indicate to the recipient that the message relates to the collection of a debt." Id. at 1177. Therefore, its exposure did not violate the FDCPA.

The internal account number used by Defendant is not linked to any assets held by

Plaintiff — only the debt she owes to T-Mobile. It is therefore significantly different from a

credit card number that a person can charge against, or debit card number linked to a checking

account containing accessible funds. Rather, the account number here is the "functional

equivalent of a bar code." Marx, 668 F.3d at 1183. Hendricks's declaration at best provides

speculation that the disclosure of this number could lead to Plaintiff's harm. See Gans, 762 F.2d

at 341. Therefore, even if identity theft was a factor, Plaintiff would not be able to survive a

summary judgment motion.

In sum, whether a symbol could lead to identity theft is not the correct question. Rather,

the Court must determine whether the presence of the account number on the envelope "signal[s]

that it is a debt collection letter, [or] tend[s] to humiliate, threaten, or manipulate" the Plaintiff.

Goswami, 377 F.3d at 493. The Court concludes that it does neither of these things as a matter

of law. Therefore, since exposure of this account number on the envelope and through the QR

code is benign, § 1692f(8) is not violated.

### 2.    The Amount Due

Plaintiff also argues that the amount she owes to the debt collector is exposed when the

QR code is scanned, and that this violates the FDCPA. Although revealing to the public the

amount that is owed could violate the FDCPA, as it might "tend to humiliate, threaten, or

manipulate" the debtor, the Court is not convinced that the amount due has been revealed in this

case.

When scanned, the QR code reveals the following:

ATERSO01,#K#ⁱ        0549, Courtney Douglass, 228 King St Apt 3, Pottstown,
PA, 194645515280,R241,802.04

11

(Doc. No. 36 at 1 (underline in original).)  At issue is the "802.04" that ends this string of letters, numbers, and symbols.  Plaintiff's outstanding debt was $802.04.  (Doc No. 52 at 5.)  Plaintiff argues that this figure is exposed when scanning is conducted, and this revelation violates the FDCPA.

The same issue was before the court in Waldron.  That court noted that it has been "uniformly held that the gravamen of a 1692f(8) violation is that the challenged symbol clearly refers to a debt."  Waldron, 2013 WL 978933, at *6.  To any observer not familiar with Defendant's encoding practices, the embedded data is "a seemingly random series of letters and numbers."  Id. at *5.  Accordingly, "[n]o reasonable fact finder could determine that the final five digits of this incomprehensible series represent a sum of money Plaintiff owes to a third party." Id.

The Court agrees with the reasoning of Waldron.  Since the "random series of letters and numbers" revealed through the QR code does not "clearly refer to a debt," or "tend to humiliate, threaten, or manipulate" Plaintiff, Defendant has not violated the FDCPA.  Goswami, 377 F.3d at 493; Waldron, 2013 WL 978933, at *6.

## V.    CONCLUSION

Defendant's Motion for Summary Judgment will be granted.  Judgment will be entered in favor of Defendant.  An appropriate Order follows.

R. 15