# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## NO. 13-3588

COURTNEY DOUGLASS, individually and on
behalf of all others similarly situated,

Appellant,

v.

CONVERGENT OUTSOURCING,

Appellees.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
in Civil Action No. 12-cv-1524(JHS)

## REPLY BRIEF OF APPELLANT

Cary L. Flitter
Theodore E. Lorenz
Andrew M. Milz
FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

SaraEllen Hutchison
Law Office of SaraEllen
Hutchison, PLLC
1752 N.W. Market Street #915
Seattle, WA 98107
(206) 529-5195

Attorneys for Appellant
Courtney Douglass

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................. ii

I.     SUMMARY OF ARGUMENT IN REPLY .................................. 1

II.    LEGAL ARGUMENT IN REPLY ................................................ 2

    A.    The So-Called "Benign Language" Exception is Rooted in the
    Absurdity Doctrine    ............................................................. 2

    B.    "Benign Language" Does Not Mean Words That Have Caused
    No Proven Harm    .................................................................. 6

    C.    A Statute That Effecitvely Bars Public Disclosure of Personal Identifying
    Information Such as a Financial Account Number is Not Absurd ................. 8

    D.    Plaintiff's Expert Evidence Should Not Have Been Discounted ....... 11

    E.    Damages are Not at Issue in this Appeal ........................................... 13

III.   CONCLUSION ................................................................................ 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF BRIEF TEXT

CERTIFICATION OF VIRUS CHECK

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Allen ex rel Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) ............... 14

*Anderson v. Wilson*, 289 U.S. 20 (1933)................................................................. 11

*Beler v. Blatt Hassenmiller, Leibsker & Moore, LLC*, 480 F.3d 470
(7th Cir. 2007) ............................................................................................................. 8

*Brown v. Card Service Center*, 464 F.3d 450 (3d Cir. 2006) ............................ 8, 15

*Carroll v. Wolpoff & Abramson*, 53 F.3d 626 (4th Cir. 1995) .............................. 14

*Dutton v. Wolpoff & Abramson*, 5 F.3d 649 (3d Cir. 1993) ..................................... 3

*FTC v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir. 2007)........................... 3, 7, 15

*Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488 (5th Cir. 2004).............. 3, 6

*Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) .............................................. 10

*Hamid v. Stock & Grimes, LLP,* 876 F. Supp. 2d 500 (E.D. Pa. 2012).................... 7

*Heintz v. Jenkins*, 514 U.S. 291 (1995)................................................................... 12

*In re Chambers Dev. Co., Inc.,* 148 F.3d 214 (3d Cir. 1998) ................................. 12

*In re Downey Reg'l Med. Ctr.,* 441 B.R. 120 (B.A.P. 9th Cir. 2010).................... 13

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA,*
559 U.S. 573 (2010) ................................................................... 4, 7, 11, 12

*Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996)....................................................... 14

*Lee v. Thomas & Thomas*, 109 F.3d 302 (6th Cir. 1997) ....................................... 14

*McMillan v. Collection Professionals, Inc.,* 455 F.3d 754 (7th Cir. 2006)............ 11

*Peter v. GC Services, LP*, 310 F.3d 344 (5th Cir. 2002) .......................................... 5

*Spira v. Ashwood Fin.*, 371 F. Supp. 2d 232 (E.D. N.Y. 2005)............................ 15

*Strand v. Diversified Collection Serv., Inc.,* 380 F.3d 316 (8th Cir. 2004) .............. 3

*Thompson v. Siratt*, 95 F.2d 214 (8th Cir. 1938)..................................................3

*Volden v. Innovative Fin. Sys.*, 440 F.3d 947 (8th Cir. 2006) ................................ 14

*Waldron v. Prof. Med. Mgmt.*, Civ. No. 12-1863, 2013 WL 978933 (E.D. Pa. Mar. 13, 2013)................................................................................................................ 5

*Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004).................................... 7, 9

**Statutes**

15 U.S.C. § 1692(a)........................................................................................... 8, 15

15 U.S.C. § 1692e(5)............................................................................................. 15

15 U.S.C. § 1692f............................................................................................... 3, 14

15 U.S.C. § 1692f(8) ...................................................................................... passim

15 U.S.C. § 1692g................................................................................................. 14

15 U.S.C. § 1692k(a)............................................................................................... 7

15 U.S.C. § 1692k(a)(2)(B)..................................................................................... 7

15 U.S.C. § 1692k(b) .............................................................................................. 9

15 U.S.C. § 6801 ..................................................................................................... 9

**Other Authorities**

2A SUTHERLAND STATUTORY CONSTRUCTION § 46.7 (7th ed.)................................. 4

Paul Ziobro & Danny Yadron, *Target Now Says 70 Million People Hit in Data Breach*, WALL STREET JOURNAL (Jan 10, 2014 8:36 PM), http://online.wsj.com/news/articles/SB100014240527023037544045793122325 46392464 ............................................................................................................ 10

Peter J. Henning, *Adding Up the Costs of Data Breaches*, NEW YORK TIMES (Jan. 28, 2014 9:16 AM), http://dealbook.nytimes.com/2014/01/28/adding-up-the-costs-of-data-breaches/ ...................................................................................... 10

## I.    **SUMMARY OF ARGUMENT IN REPLY**

The public disclosure of personal identifying information such as a financial account number can never be deemed benign.

The so-called "benign language" exception to the ban on extraneous markings on envelopes is rooted in the Absurdity Doctrine.  But courts resort to this Doctrine very sparingly out of deference to legislative enactment.  This Court should reject a judicially created "benign language" exception to § 1692f(8) – or determine not to reach the issue at this time because the disclosure of personal identifying information such as account numbers is not benign.  Protection of consumer privacy, such as personal identifying information, is a core concern of the FDCPA.  Neither § 1692f(8) nor the many other statutes and rules that prohibit public disclosure of financial account numbers are absurd.

Mrs. Douglass does not raise a claim for actual damages; she need not have been personally victimized by the unlawful dissemination to sue under the Act's statutory damages provision.  Private enforcement seeking statutory damages is an important component of the FDCPA's scheme.

It was error for the district court to weigh the opinions of competing experts.  Douglass' expert on consumer privacy, Evan Hendricks, did not testify to legal conclusions, as Appellee suggests.  Rather, Hendricks appropriately considered a number of statutes and agency rules as part of the basis for his opinion that

Convergent disseminated personal identifying information contrary to accepted conventions of privacy. This testimony is helpful in part to demonstrate that a statute effectively barring such dissemination by debt collectors does not lead to absurd results.

## II.    LEGAL ARGUMENT IN REPLY

Before addressing the merits of any asserted "benign language" exception, Douglass reiterates her position in this appeal: the public disclosure of personal identifying information such as a financial account number can never be deemed benign. That said, Douglass wishes to reply to Appellee's argument for a benign language exception.

### A. The So-Called "Benign Language" Exception is Rooted in the Absurdity Doctrine

In its brief in support of affirmance, Convergent does not argue that it complied with the mandate of 15 U.S.C. § 1692f(8) as written. Rather, Convergent relies exclusively upon its claim that this Court should create and adopt a "benign language" exception to the statute. Convergent then argues that since its disclosure of Douglass' account number caused Douglass no proven damage, such as theft of her identity, the dissemination is therefore benign and non-actionable.

Since there is no "benign language" exception in the text of the statute, a peek into its origin is appropriate. The leading cases to have added a "benign language" exception to FDCPA § 1692f(8) have done so under the rubric of the

cannon of statutory construction known as the "Absurd Results" or "Absurdity Doctrine." *E.g., Strand v. Diversified Collection Serv., Inc.,* 380 F.3d 316, 318 (8th Cir. 2004) (citing *Thompson v. Siratt*, 95 F.2d 214, 216 (8th Cir. 1938) (suggesting even unambiguous statutes should not be construed according to their terms if the construction leads to "absurd or impracticable consequences.")). So, in *Strand*, the court refused to apply the plain language of § 1692f(8) to bar the markings "personal and confidential" and "immediate reply requested" on a collection envelope. *Strand*, 380 F.3d at 319-20.

In *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488 (5th Cir. 2004), the court adopted a benign language exception when the marking "priority letter" on the outside of an envelope was challenged. *Id.* at 494. "In interpreting statutes we do not look beyond the plain meaning of the statute unless the statute is absurd or ambiguous." *Id.* at 492.[1]    Convergent appears to acknowledge that this

---

[1]    Douglass submits that the *Goswami* court's conclusion that § 1692f(8) is ambiguous (because it may be read to only ban markings that are also unfair or unconscionable) is flawed and out of keeping with Third Circuit jurisprudence. 15 U.S.C. § 1692f provides "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct <u>is a violation</u> of this section ..." (emphasis added). This section of the Act must also be given its plain reading, which simply does not condition the eight subsections on a further showing that the conduct is unfair or unconscionable. "Within each broad category of prohibited conduct, the FDCPA includes examples of specific practices that are prohibited." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 166 (3d Cir. 2007). The directive: "is a violation of this section" under § 1692f is unambiguous. *See Dutton v. Wolpoff*

judicially created "benign language" exception has its roots in the Absurdity Doctrine. (Appellee Br. at 10). ("Various courts have recognized the absurdity of applying this provision [1692f(8)] 'as written' …").

But the Absurdity Doctrine is, of necessity, a seldom invoked rule, and a narrow exception to the settled rule of faithful deference to legislative enactment. The Absurdity Doctrine should be "used sparingly because judicial speculation that the legislature could not have meant what it unmistakably said risks corrupting the separation of powers doctrine." 2A SUTHERLAND STATUTORY CONSTRUCTION § 46.7 (7th ed.)(Limits of Literalism). There is no basis for a court to consider rewriting a statute merely because application of the statute could potentially be absurd under a hypothetical set of facts not present in the case under review. The FDCPA should not be assumed to "compel absurd results …" *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 U.S. 573, 600 (2010). The FDCPA's clear statutory text should not be disregarded merely because the application of that text to a hypothetical set of facts could theoretically lead to an absurd result. That is, the broad ban upon envelope markings (that by its terms includes personal identifiers) should not be disregarded simply because placement of a stamp could also violate – particularly where the use of a stamp is in no way an issue in the case.

---

*& Abramson*, 5 F.3d 649, 654 (3d Cir. 1993) ("all communication" does not mean "some communications.")

4

Yet, that is precisely what Convergent is asking this Court to do. Convergent has not argued that a law that would ban the public disclosure of financial account numbers is and must be disregarded as absurd. Rather, Convergent argues that applying § 1692f(8) literally as written could ban the placement of a postage stamp or a return address on the envelope and *that would be* absurd.[2] (Appellee Br. at 10).

Put otherwise, although Douglass believes that principles of statutory construction leave no room to add an additional exception for "benign language" to an unambiguous § 1692f(8), this Court does not have to reach the question to decide this appeal. This is so because the public disclosure of personal identifying information such as an account number invokes one of the core privacy concerns animating the Act and could never be deemed benign.

This was the approach taken by the Court of Appeals in *Peter v. GC Services, LP*, 310 F.3d 344 (5th Cir. 2002). In *Peter*, the defendant debt collector sent out a dunning letter which bore in the upper left hand corner a return address of "U.S. Department of Education", "Official Business", "Penalty for Private Use,

---

[2]     Convergent relies on *Waldron v. Prof. Med. Mgmt.*, Civ. No. 12-1863, 2013 WL 978933 (E.D. Pa. Mar. 13, 2013) for support. But the court in *Waldron* adopted a "benign language" exception in part on the notion that literal application would bar use of a stamp or debtor's address. *Id.* at *2. Douglass respectfully submits the court in *Waldron* should not have resorted to the Absurd Results Doctrine because no claim about stamps or addresses was presented, and banning the disclosure of personal data on millions of pieces of mail is not absurd. *See* Appellant Br. at 33-34 (distinguishing *Waldron*).

$300". *Id.* at 347. The collector, GC Services, argued and the district court held that § 1692f(8) as literally applied would bar even the placement of a stamp or the debtor's address on an envelope and that would create an absurd result – thereby warranting a broad "benign language" exception to the Act. *Id.* at 351. The Court of Appeals, confining its task of statutory construction to the case presented for review, declined to "reach the issue of whether § 1692f(8) implicitly includes an exemption for benign language, since the Defendant's impersonation of the Department of Education is certainly not benign." *Id.* at 351. The debt collector's use of the name "U.S. Department of Education" violated the plain language of § 1692f(8) and was actionable without any showing of actual harm or embarrassment to the debtor.[3] *Id.*

## B. **"Benign Language" Does Not Mean Words That Have Caused No Proven Harm**

In its brief, the Appellee has set up a strawman argument which it then proceeds to shoot down. Convergent asserts that there is a "benign language" exception automatically to be read into the statute. (Appellee Br. at 10). Convergent then asserts that because Ms. Douglass does not allege actual damages from dissemination of her account number, the violation asserted is benign and

---

[3]     Two years later, in 2004, the Fifth Circuit ultimately adopted a "benign language" exception to § 1692f(8) in *Goswami*, 377 F.3d 488. But the *Goswami* court did so where the challenge before it was the inclusion of the innocuous phrase "priority letter" on an envelope, *i.e.,* a proper case before it to determine whether to adopt a benign language exception. *Id.* at 494.

therefore nonactionable. *Id.* at 12-13. But each step of this argument is flawed. First as noted, there is no "benign language" exception in the body of the statute, and this case – involving disclosure of personal identifying information – presents no occasion to consider whether this Court should add such an exception.

Second, even if, *arguendo*, there were to be a "benign language" exception engrafted, "benign" does <u>not</u> equate to an absence of demonstrable harm. This is not a suit for actual damages. Convergent appears to have overlooked that "the FDCPA allows consumers to sue an offending creditor for actual damages, attorney's fees and costs, as well as statutory damages up to $1,000.00 [in an individual case]." *FTC*, 502 F.3d at 166 (*citing* 15 U.S.C. § 1692k(a)). Actual damages, *i.e.*, proven harm, is not a prerequisite to recovery under the Act. A "[p]laintiff may collect statutory damages even if there are no actual damages." *Hamid v. Stock & Grimes, LLP,* 876 F. Supp. 2d 500, 502 (E.D. Pa. 2012) (Bartle, J.) (*citing Weiss v. Regal Collections*, 385 F.3d 337, 340 and n.5 (3d Cir. 2004)). Private enforcement for statutory damages is an important goal of the legislation. *Jerman*, 559 U.S. at 603. The Supreme Court has noted the "FDCPA's calibrated scheme of statutory incentives to encourage self-enforcement." *Id.* This is a consumer class action seeking not actual damages but statutory damages of up to $500,000.00, as provided by the Act. 15 U.S.C. § 1692k(a)(2)(B).

Convergent, as did the court below, takes too narrow a view of the Act in arguing that an envelope marking must reference a delinquent debt or cause Douglass "to suffer embarrassment or harm" in order to be actionable.  (*See* Appellee Br. at 13; Slip op. at 8-9; R. 11-12).  Convergent is simply wrong when it argues that "Douglass must first show that what could be viewed on or through the envelope revealed that the letter was for the purpose of collecting a delinquent debt ..." (Appellee Br. at 18).  Revealing that correspondence concerns an overdue debt is only one *illustration* of collector misconduct banned by the Act.  Plainly, the text of § 1692f(8) is broader than this single  illustration, and protecting against "invasions of individual privacy" is an equally important legislative goal. *See* 15 U.S.C. § 1692(a); *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006).

### C. A Statute That Effectively Bars Public Disclosure of Personal Identifying Information Such as a Financial Account Number is Not Absurd

At Part C of its brief, Convergent attempts to distinguish the statutes and rules that ban public disclosure of account numbers cited by Douglass at 17-20 of her opening Brief.  To be clear, Douglass is not seeking "to incorporate those statutes into the FDCPA" as Convergent suggests (Appellee Br. at 18).  Douglass is not attempting to incorporate one of these *other* privacy statutes or rules into the FDCPA's blanket prohibition against unfair or unconscionable conduct.  *Compare Beler v. Blatt Hassenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007).

(*See* Appellant Br. at 18-20). Douglass is not seeking remedy under the Graham-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq*. Douglass simply cites these many statutes and rules to the Court's attention for the unremarkable proposition that, in many facets of commerce and litigation, the disclosure of personal identifying information has been taken very seriously. Steps have been taken both legislatively and by court rule to restrict dissemination of personal identifying information such as account numbers. There is no basis to conclude that these statutes, individually or collectively, are irrational or that implementing those statutes and rules (by requiring a redaction of account numbers) would lead to "absurd results." Nor must a party or litigant prove that disclosure of her unredacted account number in a particular instance has caused actual harm in order for the redaction requirement to have force of law. But this is exactly what Convergent is arguing: that because Douglass has not proven that she has yet been harmed or embarrassed by disclosure of her financial account number, no claim will lie for violation of FDCPA § 1692f(8). (Appellee Br. at 12). This is completely at odds with the laudable goal of statutory damages and vigorous private enforcement of the Act by class action. *See Weiss*, 385 F.3d at 345 and n.13.

It may be that the presence or absence of actual harm will be one factor in the factfinder's determination of the amount of statutory damages to be awarded. *See* 15 U.S.C. § 1692k(b). In determining the amount of liability in any class

action the Court shall consider, among other relevant factors "the frequency and persistence of noncompliance by the debt collector [and] the nature of such noncompliance." *Id.; See Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991). But this goes to the amount of damages, not whether there is liability.

It is not absurd to bar a financial institution such as this large debt collector from the needless public disclosure of personal identifying information upon millions of pieces of mail – just as it is not absurd for this Court and other agencies to require redaction of account numbers in documents to be filed of record. Douglass explained in her opening brief why Convergent was a "larger participant" and a covered "financial institution" under the rules of the Consumer Financial Protection Bureau. (Appellant Br. at 18 and n.4). Convergent has not challenged that assessment in its opposition brief.

Problems with data breach, identity theft, and misuse of personal information are in the news almost daily.[4] It is well within the realm of legislative discretion to pass a law effectively prohibiting the disclosure of such personal identifying information. Convergent, one of the largest collectors of consumer

---

[4]    *See e.g.,* Peter J. Henning, *Adding Up the Costs of Data Breaches*, NEW YORK TIMES (Jan. 28, 2014 9:16 AM), http://dealbook.nytimes.com/2014/01/28/adding-up-the-costs-of-data-breaches/; Paul Ziobro & Danny Yadron, *Target Now Says 70 Million People Hit in Data Breach*, WALL STREET JOURNAL (Jan 10, 2014 8:36 PM), http://online.wsj.com/news/articles/SB10001424052702303754404579312232546 392464.

debt in the country, is not entitled to a free pass under the guise of an ill-fitting "absurdity" argument that has arisen in other circuits out of cases presenting only the most innocuous envelope markings.    Convergent was required to follow § 1692f(8), regardless of how much harm its violation ultimately caused to date. "Section 1692f(8) explicitly bars the use of symbols on a debt collection letter's envelope, although it is difficult to say that such activity necessarily would create a substantial injury to the debtor." *McMillan v. Collection Professionals, Inc.,* 455 F.3d 754, 764-65 (7th Cir. 2006).

As noted, laws such as the envelope ban in § 1692f(8) are prophylactic in nature and prohibit disclosure of the personal identifying information at the source. Perhaps in doing so, the legislature determined this to be more effective against invasions of individual privacy than a differently worded statute that would only ban disclosure of personal identifying information if harm or loss is caused and proven.    But these are legislative judgments. *See Jerman,* 559 U.S. at 600 (the FDCPA's provisions not assumed "to compel absurd results"); *Anderson v. Wilson,* 289 U.S. 20, 27 (1933) ("We take the statute as we find it.").

### D. **Plaintiff's Expert Evidence Should Not Have Been Discounted**

Convergent pursues the curious argument that any "testimony regarding what is, or is not, nonpublic personal information has no relevance to the issues of this litigation." (Appellee Br. at 31).    This is odd because Convergent, not

Douglass, raised the issue of absurdity and potential harm from disclosure.  Surely Convergent cannot simultaneously seek to have Douglass' claim dismissed as "benign language" yet at the same time complain about the relevance of evidence and argument tending to show why disclosure of nonpublic personal information is a legitimate public concern, *i.e.,* not benign.  *See In re Chambers Dev. Co., Inc.,* 148 F.3d 214, 229 (3d Cir. 1998) (contours of judicial estoppel).  To the extent a court needs to reach the issue of absurdity, or statutory damages, it is proper to inform the court with expert testimony concerning policy reasons for the statute, *i.e.*, that applying the Act as passed would not lead to absurd results.  The Supreme Court has held that it is the collector's heavy burden to show that "the result [will be] so absurd as to warrant disregarding the weight of textual authority [of the FDCPA]." *Jerman*, 559 U.S. at 604 (quoting *Heintz v. Jenkins*, 514 U.S. 291, 295 (1995) (internal quotations omitted)).

That is all Plaintiff sought to do with Mr. Hendricks – and for that matter, what Convergent sought to rebut with its expert Mr. Barrows.  Mr. Hendricks is a recognized expert who is often called upon for his views in court and in congressional and administrative proceedings on issues of privacy. (R. 639-41 at ¶¶ 28, 29, 31).  That "relates to the collection, maintenance, storage, use, disclosure and/or sale of personal data."  (Hendricks Dep. Feb. 28, 2013, p. 8, R. 503).  Hendricks has served as an expert in other privacy cases involving data breaches.

*Id.* Hendricks testified that "sensitive information" includes nonpublic personal information such as account numbers. (Hendricks Dep. p. 44, R. 539). Hendricks also opined that disclosure of the account number on the outside of the envelope "violates every known privacy standard". (Hendricks Dep. p. 47, R. 542). Evidence of privacy standards included provisions of the FDCPA, the California Breach Law, the Federal Trade Commission standard, the Graham-Leach-Bliley standards and Fair Credit Reporting Act. (*Id.* at 48, R. 543). The witness was not giving an opinion on ultimate legal issues nor instructing the court on the law. The witness was simply incorporating a number of pieces of salient legislation as evidence of what Hendricks, a renowned privacy expert, believed to be acceptable privacy standards. For these reasons, Convergent's belabored argument (Appellee Br. at 30-33) about the admissibility of legal conclusions completely misses the mark.[5]

### E. Damages are Not at Issue in this Appeal

In the final section of its brief, Convergent raises an argument that was not briefed below, addressed by the district court, nor raised in Douglass' opening brief. Namely, Convergent is of the opinion that if there is a violation, it is "purely

---

[5]    At page 30, Convergent states that "[t]he meaning of a statute, namely, what is 'nonpublic personal information' under the GLBA, is a question of law. *See In re Downey Reg'l Med. Ctr.*, 441 B.R. 120, 129 (B.A.P. 9th Cir. 2010)." But *Downey* dealt with the entitlement to discovery in a contested bankruptcy proceeding and said nothing whatsoever about the GLBA or what is "nonpublic personal information." *Downey*, 441 B.R. 120.

technical" and no damages should be awarded. (Appellee Br. at 33). Convergent then goes on to cite a series of out-of-circuit opinions mostly dealing with attorney fee awards in cases where small or no damages had been awarded. (Appellee Br. 33-35). The first three cited cases, *Johnson, Lee* and *Carroll* do not deal with FDCPA liability issues or § 1692f(8).[6]  Neither damages nor post-judgment attorney fees were at issue below, nor are they at issue in this appeal. Convergent must know that this Court may not simply issue advisory opinions at the behest of a party.

*Volden v. Innovative Fin. Sys.*, 440 F.3d 947 (8th Cir. 2006) had nothing to do with consumer privacy, disclosure of personal identifying information on a collection envelope or even § 1692f. The portion of *Volden* relied upon by Convergent addressed the failure to make full disclosure in the initial communication as called for by 15 U.S.C. § 1692g. Even if *Volden* bore any relation to the issue *sub judice* – and it does not – that court's "purposeful violation" requirement would be in considerable tension with this Court's (and most circuits') rule of strict liability in cases arising under § 1692f. *See Allen ex rel Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 and n.7 (3d Cir. 2011) (citing cases).

---

[6]    *Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996), *Lee v. Thomas & Thomas*, 109 F.3d 302 (6th Cir. 1997), *Carroll v. Wolpoff & Abramson*, 53 F.3d 626 (4th Cir. 1995).

*Spira v. Ashwood Fin.*, 371 F. Supp. 2d 232 (E.D. N.Y. 2005) was an order on reconsideration of a grant of summary judgment involving a claim of false threat of suit under § 1692e(5). The court found the letter non-deceptive, and that the plaintiff had not met her burden on reconsideration in any case. Unlike *Spira*, the precise practice engaged in here by Convergent violates a core privacy concern of the Act, 15 U.S.C. § 1692(a), and is barred by the plain language of § 1692f(8). *Spira* is entirely inapposite.

Finally, Convergent seeks to escape liability for its widespread breach of consumer privacy by pejoratively calling Ms. Douglass' case nothing more than a "mole hill." (Appellee Br. at 36). Perhaps if the personal data of a senior officer of Convergent were revealed to the public, Appellee might feel differently. Convergent's cavalier attitude toward its duties as a regulated entity -- suggesting the violation is "hypertechnical" (Appellee Br. at 35) -- only underscores the low regard in which Convergent holds the Act that regulates its massive collection efforts. Appellee's dismissive approach is entirely inconsistent with the goals and text of the FDCPA and with this Circuit's consistent enforcement of the rights protected by this remedial legislation. *See Brown*, 464 F.3d at 453; *Check Investors*, 502 F.3d at 166.

III.  **CONCLUSION**

For these reasons and those more fully set forth in Appellant's Opening Brief, Courtney Douglass requests that the judgment of the district court be reversed and this matter remanded for further proceedings.

Respectfully submitted:

Date: 01/30/14

/s/ Cary L. Flitter
CARY L. FLITTER
ANDREW M. MILZ
FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

SARAELLEN HUTCHISON
LAW OFFICE OF SARAELLEN
HUTCHISON, PLLC
1752 N.W. Market Street #915
Seattle, WA 98107
(206) 529-5195

**Attorneys for Appellant**

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiff/Appellant, Ashley Gager, certifies that the foregoing Reply Brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 32(a)(5)-(7) and Third Circuit Local Appellate Rules 32.1, 32.2 and 28.5.   Exclusive of those portions exempted pursuant to Rule 32(a)(7)(B), the foregoing Reply Brief contains 4307 words.


Date: <u>01/30/14</u>                    <u>*/s/ Cary L. Flitter*</u>
                               CARY L. FLITTER
                               Attorney for Appellant

## <u>CERTIFICATE OF BRIEF TEXT</u>

I, CARY L. FLITTER, hereby certify that the text of the E-Brief and Hard Copies of the foregoing REPLY BRIEF OF APPELLANT are identical.


Date: <u>01/30/14</u>            <u>/s/ Cary L. Flitter</u>
                              CARY L. FLITTER

## **CERTIFICATION OF VIRUS CHECK**

I, CARY L. FLITTER, hereby certify that a virus check was performed on the PDF file of the foregoing REPLY BRIEF OF APPELLANT prior to electronic filing using ESET NOD32 AntiVirus.


Date: <u>01/30/14</u>          <u>*/s/ Cary L. Flitter*</u>
                             CARY L. FLITTER

## CERTIFICATE OF SERVICE

I, Cary L. Flitter, do hereby certify that electronic copies will be sent by email on January 30, 2014, and I will cause two copies of the foregoing Reply Brief of Appellant to be mailed on January 31, 2014, upon the following counsel as follows:

Ed Walton, Esquire
BUSH & RAMIREZ, LLC
5615 Kirby Drive, Suite 900
Houston, TX 77005

Richard Perr, Esquire
FINEMAN, KREKSTEIN & HARRIS, P.C.
Mellon Bank Center
1735 Market Street, Suite 600
Philadelphia, PA 19103
**Attorney for Appellee**

Date: 01/30/14

/s/ Cary L. Flitter
CARY L. FLITTER