IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 13-3588

---

COURTNEY DOUGLASS, on behalf
of herself and all others similarly situated
Appellant

v.

CONVERGENT OUTSOURCING,
formerly known as ER Solutions, Inc.,
Appellee

---

ON APPEAL FROM THE ORDER ENTERED ON AUGUST 6, 2013 OF THE
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA CIVIL ACTION NO. 12-1524(JHS)

---

**PETITION FOR REHEARING EN BANC OR PANEL REHEARING**

---

**Ed Walton**
BUSH & RAMIREZ, PLLC
**5615 Kirby Dr., Suite 900**
**Houston, TX  77005**
**(713) 626-1555**
**(713) 622-8077 (Facsimile)**
**Email:  ewalton@bushramirez.com**

**Richard J. Perr**
FINEMAN KREKSTEIN & HARRIS, P.C.
**1735 Market Street, Suite 600**
**Philadelphia, PA  19103**
**(215) 893-9300**
**(215) 893-8719 (Facsimile)**
**Email:  rperr@finemanlawfirm.com**

{00859346;v1}

## STATEMENT OF COUNSEL PURSUANT TO L.A.R. 35.1

Pursuant to Federal Rule of Appellate Procedure 35(b)(1)(B) and L.A.R. 35.1, Counsel for Convergent Outsourcing (hereinafter referred to as "Convergent") provides the following Statement of Counsel:

We express a belief, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance, as it is the first case in the United States involving alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, arising from the use of modern technology, namely, QR Codes and internally-generated tracking numbers, and the decision will have a monumental impact on the $55.2 billion debt collection industry and the future practice of mailing collection letters.

## STATEMENT OF THE CASE

Pursuant to the Federal Rule of Appellate Procedure 35(b) and 40(a), Convergent respectfully seeks a rehearing en banc or panel rehearing of the Court's decision issued in this appeal on August 28, 2014. Copies of the judgment and opinion are attached hereto as **Exhibit A**.

In its opinion, the Court frames the issue as follows: "we are asked to decide whether the disclosure of a consumer's account number on the face of a debt collector's envelope violates § 1692f(8) of the [FDCPA]". (Slip Op. 3). However, this is an incorrect characterization of the issue before the Court. The evidence

before the District Court below reveals that the number in question was not a financial account number, but was the internal tracking number used by Convergent, known to no other person or entity, including Douglass, and having no capacity to entangle a consumer in any financial transaction. Thus, there was no disclosure of the consumer's "account number" or any other personal data or information that could possibly be used to "expose her financial predicament." (Slip Op. 3, 10). As explained in detail in Convergent's brief, the internal tracking number does not constitute personally identifying financial information as defined by 16 C.F.R. § 313.3(o) or any other authority. (*See* Convergent's Appellee Brief at pp. 18-31).

The Court further held that the disclosure of Convergent's internal tracking number was not "benign" as a matter of law. This was incorrect as every shred of evidence presented to the District Court revealed that the number was innocuous, Douglass was not harmed by the disclosure of the sequence of letters and numbers, and neither Douglass nor her "expert" could provide any manner in which Douglass could be harmed by such disclosure.

The District Court's analysis and determination that the sequence of letters and numbers in question was benign was correct, and this Court erred in reaching a wholly unsupported determination otherwise as a matter of law. However, in the alternative, and in the event that either this panel or the Court en banc should

disagree, at the very least, the Court made an erroneous factual determination that, as a matter of law, the information at issue is a "core piece of information pertaining to Douglass's status as a debtor and Convergent's debt collection effort." (Slip Op. 10). The proper result would have been to remand the matter to the District Court for factual finding.

## OVERVIEW

On August 28, 2014, a panel of this Court held that sequence of letters and numbers, "R-xxxx-5459-R241", was not "benign" as a matter of law and that the inclusion of this internal tracking number where it could be seen without opening the envelope was a violation of the FDCPA.

The panel's decision involves a question of exceptional importance as it will have a tremendous effect on the manner in which collection agencies send collection letters. As of September 2011, there were 4,100 debt collection agencies in the United States. Wayne Parry, *Debt Collectors: Struggling Economy Brings Ups and Downs for Business*, Huffington Post, September 21, 2011, http://www.huffingtonpost.com/2011/09/21/debt-collectors-bad-economy_n_973987.html. A recent study conducted by the Associated Press revealed that more than one in three Americans (or approximately 77 million adults) have at least one debt currently in collection. Josh Boak, *Study: 35 percent in US facing debt collectors*, Associated Press, July 30, 2014, http://www.bigstory.

ap.org/article/study-35-percent-us-facing-debt-collectors.    The third-party debt collection industry was responsible for returning $55.2 billion to the United States economy in 2013.    Ernst & Young, *The Impact of Third-Party Debt Collection on the U.S. National and State Economies in 2013*, July 2014, http://www.acainternational.org/images/21594/theimpactofthird-partydebt collectiononthenationalandstateeconomies2014.pdf.

## ARGUMENT

I.    **The Court Erred by Making an Unsupported Conclusion that an Internal Tracking Number was not "Benign" as a Matter of Law.**

Section 1692f(8) of the FDCPA provides that it is a violation to use any language or symbol on\\[1] an envelope other than the address of the debt collector or the debt collector's name if such name does not indicate that the letter is sent for the purposes of debt collection.    15 U.S.C. § 1692f(8).    It is patently obvious that this provision cannot be literally interpreted.    Otherwise, a debt collector could not put the consumer's name or address or a stamp on an envelope without violating the FDCPA.    Because this provision cannot be taken literally, the following question inevitably must be asked: "what can be included on the outside of an envelope?".

---

[1] /    Convergent does not take issue with the Court's determination that what can be seen through a glassine window is the functional equivalent of being placed on the outside of an envelope.

All courts that have addressed this issue have adopted a benign language exception to § 1692f(8).  *See Strand v. Diversified Collection*, 380 F.3d 316, 317-19 (8th Cir. 2004); *Goswami v. American Collections*, 377 F.3d 488, 494 (5th Cir. 2004).  In addition, the courts that have considered this issue have also found that in order to constitute a violation of the FDCPA, the allegedly offensive language must indicate both that the letter is for the purposes of collecting a debt, *see Johnson v. NCB*, 799 F. Supp. 1298 (D. Conn. 1992); *Linbergh v. Transworld*, 846 F. Supp. 175 (D. Conn. 1994); *Masuda v. Thomas Richards*, 759 F. Supp. 1456 (C.D. Cal. 1991); *Davis v. Baron's*, No. 00 C 4104, 2001 U.S. Dist. LEXIS 19008 (N.D. Ill. Nov. 19, 2001), and that there must be an indication that the debt is delinquent, *see Goswami*, 377 F.3d at 494.

The language complained of consists of Convergent's internal tracking number, a number that means nothing to any person or entity other than Convergent.  Douglass testified that she had not been harmed by the disclosure of the number.  (*See* Convergent's Appellee Brief at pp. 4-6; R.51 [Convergent's Motion for Summary Judgment at ¶ 8]; R.165 [Deposition of Courtney Douglass dated September 14, 2012 at 24:17-21]).  Not even the "expert" retained by Douglass could state how or in what manner this internal tracking number could be used to cause Douglass harm.  (*See* Convergent's Appellee Brief at p. 8; R.604 [Deposition of Evan Hendricks dated February 28, 2013 at 109:2-13]; R. 136

[Convergent's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment]).

Convergent acknowledges that an allegedly aggrieved consumer may recover under the FDCPA without showing actual damages. *See* 15 U.S.C. § 1692k(a)(2)(A). However, if language or symbols does not have the capacity to harm, it is benign and, therefore, not actionable pursuant to the massive weight of authority cited above.

As would be expected, there is little authority for the proposition that what is not harmful cannot be something other than benign, as litigants, even in this day and age, do not typically waste their time, money, and efforts on trying to disprove the obvious. However, existing authority on the subject bears out the fact that there must be harm in order to constitute something other than benign.

In *United States v. Self*, 2 F.3d 1071 (10th Cir. 1993), charges were filed for alleged violations of the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d). The jury was instructed that in order to convict, it must find that the materials in question were hazardous waste and not "a benign or innocuous material such as water". *Id.* at 1089. The court observed that the government was required to prove that the materials in question had the potential to be harmful, i.e. not benign. *Id.* at 1090.

Similarly, Webster's Dictionary defines "benign" as: (1) "of a gentle disposition"; (2) "showing kindness and gentleness"; (3) "favorable, wholesome"; (4) "of a mild type or character that does not threaten health or life"; or (5) "having no significant effect: harmless". *See* Merriam-Webster's online dictionary at http://www.merriam-webster.com/dictionary/benign. Only the fourth or fifth definition would have any bearing on the meaning of the word "benign" in the context of the issues before this Court. Again, benign means something that is not harmful.

All of the evidence before the District Court, and the record on appeal, reveals that the meaningless jumble of numbers and letters at issue was benign, not harmful. To this date, there has been no evidence to the contrary. The District Court was correct in the analysis of these issues and the decision below should be affirmed.\[2]

---

[2] /    Tracking numbers and innocuous account numbers permeate all walks of life. From magazine subscriptions to charitable solicitations to junk mail, internal "account" numbers appear on the outside of envelopes placed into the U.S. Mail as a matter of course without general society considering those numbers to be associated in any form with "debts," "debt collection," or financial privacy.

II.    **The Court Made an Erroneous Factual Determination that the Information at Issue Is a "Core Piece of Information Pertaining to Douglass's Status as a Debtor and Convergent's Debt Collection Effort".**

The Court held that Convergent's internal tracking number was not benign as a matter of law. (Slip Op. 5-6, 10). In order to reach its holding, the Court made the following factual finding:

> The disclosure of Douglass's account number raises these privacy concerns. The account number is a core piece of information pertaining to Douglass's status as a debtor and Convergent's debt collection effort. Disclosed to the public, it could be used to expose her financial predicament.

(Slip Op. 10) (emphasis added). The Court did not explain how this determination was reached and certainly did not cite to any portion of the record that would lead to this conclusion since, there is nothing in the record to support such a determination. The internal tracking number has no relation to any of Douglass's personal identifying information (Social Security number, driver's license number, etc.) or to the account number of the original creditor. These numbers and letters are meaningless to any other person or entity, including Douglass. (R.53 [Convergent's Motion for Summary Judgment at ¶ 12]; R.162 [Deposition of Courtney Douglass at 12:12-13:16]). Even Douglass testified that she could not assign any significance to this meaningless jumble of numbers and letters until she had opened the envelope and read the letter inside. (*Id.*).

Courts have uniformly held that the gravamen of a § 1692f(8) violation is

that the challenged symbol clearly refers to a debt. *See Goswami*, 377 F.3d at 494; *see also Mathis v. Omnium Worldwide*, No. 04-1614, 2006 WL 1582301, *6 (D. Or. June 4, 2006) ("Estate Recoveries, Inc." and "Over 15 Years of Service to the Financial Industry" on an envelope does not violate § 1692f(8)); *Shulick v. Credit Bureau Collection Servs., Inc.*, No. 02-1127, 2004 WL 234374, *1 (E.D. Pa. Feb. 3, 2004) (deciding § 1692f(8) violation based on what a "casual observer" would perceive); *Johnson v. NCB Collection Servs.*, 799 F. Supp. 1298, 1305 (D. Conn. 1992) ("Revenue Department" on envelope does not clearly refer to a debt). Here, there is no such reference. Convergent did not even include its name on the collection envelope. (R.99 [Copy of collection letter dated May 16, 2011 to Douglass]; R.250-51 [Deposition of Robert Flynn, CFO of RevSpring (formerly Dantom Systems), Convergent's letter vendor, dated February 15, 203, pp. 26-31]). On the contrary, it included only a cryptic combination of numbers and letters.

There is no explanation of how this jumble of numbers and letters could have been used to identify Douglass as a debtor. Additionally, the Court did not even address the issue raised by the court in *Goswami*, 377 F.3d at 494, namely, that the language at issue must not only reveal that Douglass was a debtor but the letter must also reveal that it involved a delinquent debt.

Since the only method by which a person could "connect" the tracking number to the fact that the letter was being mailed to collect a debt is for an

individual to read the letter itself. The Court avoids the fact that once a letter is placed in the U.S. Mail, the collection letter may not be "scanned" with impunity.

Federal law proscribes postal workers' tampering with the mail. 18 U.S.C. § 1703. Mail tampering includes detaining, destroying, delaying, or opening any letter or other mail. *Id.* Postal workers are also prohibited from searching, inspecting, reading, or disclosing information obtained from the mail or its contents. *United States Postal Service, Administrative Support Manual* 274.21 (2005). Postal workers who tamper with the mail or violate these postal regulations are subject to administrative discipline or criminal prosecution. *Burrell v. Runyon*, No.95-253, 1996 U.S. Dist. LEXIS 8656, *2 (S.D. Ala. June 7, 1996).

Mail is also protected from search by postal workers under the Fourth Amendment. *See United States Postal Service, Administrative Support Manual* 274.21. Courts have thus ruled that an x-ray scan of mail constitutes a Fourth Amendment search. *See United States v. Napan*, 769 F. Supp. 2d 969, 971 (E.D. Va. 2011).

Regulations restrict access to mail by those who do not work for the Postal Service. Postal workers are allowed to "exhibit mail to the addressee only." *United States Postal Service, Handbook M-41: City Delivery Carriers Duties and Responsibilities* 131.34 (2001). Federal law prohibits taking another's mail with the specific intent to obstruct correspondence or pry into the business or secrets of

another. 18 U.S.C. § 1702. This protection continues until the mail is physically delivered to the addressee himself (not just to his mailbox) or his authorized agent. *Id.*

It is not the role of the Court to "resolve disputed questions of fact on appeal." *See United States v. Boffa*, 688 F.2d 919, 936 (3d Cir. 1982); *see also Phillips v. Teamsters, Chauffeurs, Warehousemen & Helpers Local Union No. 560*, 209 F. Supp. 768, 771-72 (D.N.J. 1962) (finding that "[i]n the domain of judicial appellate review of factual decisions of trial courts, the principle is well established that the appellate court will not retry issues of fact, or substitute its judgment for that of a trial court . . .") (citing *Coates v. Commissioner of Internal Revenue*, 234 F.2d 459 (8th Cir. 1956) and *Cities Service Oil Co. v. Harvey*, 148 F.2d 780 (10th Cir. 1945)). Whether or not there has been harm is also a factual issue. *See Melikian v. Corradetti*, 791 F.2d 274, 280 (3d Cir. 1986); *see also DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1196 (10th Cir. 2010) (whether an act or practice inflicted harm <u>or involved a risk of harm</u> presents a question of fact).

The Court's factual determination of what the sequence of letters and numbers, R-xxxx-5459-R24, represents was contrary to the record evidence. Accordingly, the Court's conclusion was erroneous. The determination of whether the internal tracking number at issue disclosed "Douglass's status as a debtor" or

"Convergent's debt collection effort" is, at best, a question of fact to be determined by the District Court and/or jury.

The Court also engaged in a factual analysis when it compared the jumble of numbers and letters at issue here to the markings giving rise to the litigation in *Strand* and *Goswami*. (Slip Op. 10-13). In *Goswami*, 377 F.3d 488, the appearance of the marking "Priority Letter" on the front of the envelope was at issue. Such language would arguably be far more likely to lead someone to believe that it was placed on an envelope containing a letter requesting payment of a delinquent debt than the internal tracking number at issue here. Anyone who has ever received a notice of delinquency is familiar with the admonishment that payment of the outstanding indebtedness is a "priority." The Court also compared Convergent's internal tracking number with the language at issue in *Strand*, 380 F.3d 1t 317, namely, the appearance of the following language on the envelope: "Personal and Confidential" and "Immediate Reply Requested." Yet, again, these notices would arguably be far more likely to lead someone to believe that the letter in question involved the collection of a delinquent debt than a string of letters and numbers which were unintelligible to anyone other than Convergent.

The comparison of these various examples of language and/or symbols requires a factual analysis of not only what is indicated by such language, but the

relative harm or risk of harm of each. However, it is improper for a court of appeals to engage in a factual determination of this nature.

## CONCLUSION

The issue of whether the information in question was benign requires a factual determination. This issue was resolved in favor of Convergent before the District Court based upon the irrefutable (in fact, factually uncontested) evidence that Douglass had not been harmed, that the jumble of letters and numbers in question was undecipherable to anyone other than Convergent, and that neither Plaintiff nor her "expert" was able to articulate any manner in which Douglass could have been harmed. Furthermore, not one, but two,[3] United States District Judges reached an identical conclusion based upon similar facts.

---

[3] /    *See Waldron v. Professional Medical Management*, No. 12-1863, 2013 U.S. Dist. LEXIS 34402, *14 (E.D. Pa. Mar. 13, 2013) (finding that the sequence of symbols and letters comprising Plaintiff's account number revealed when the QR code on the letter was scanned–XXXXXXXX,#X#XX-XXXXXXX-XXXXXXXX-X-NCOA–was a "'jumble' of letters and numbers" that "reveals nothing to a person without the means to decipher it").

For the foregoing reasons, Convergent Outsourcing respectfully requests that the matter be reheard by the Court sitting en banc or by the panel.

Respectfully submitted,

BUSH & RAMIREZ, PLLC

/s/ Ed Walton
Ed Walton
Texas Bar No.:  20828550
5615 Kirby Dr., Suite 900
Houston, TX  77005
713- 626-1555
713-622-8077 (facsimile)
ewalton@bushramirez.com

FINEMAN KREKSTEIN & HARRIS, P.C.

/s/ Richard J. Perr
Richard J. Perr
Pa. Bar No.:  72883
BNY Mellon Center, Suite 600
1735 Market Street
Philadelphia, PA  19103-7513
215-893-9300
215-893-8719 (facsimile)
rperr@finemanlawfirm.com

**Attorneys for Appellee Convergent Outsourcing**

Dated:      September 10, 2014

## CERTIFICATE OF VIRUS CHECK

The undersigned hereby certifies that pursuant to 3d Cir. L.A.R. 31.1(c), a virus check was performed on the electronic Petition submitted in this matter by McAfee and no virus was detected.

<div style="margin-left:45%;">

/s/ Richard J. Perr
Richard J. Perr
FINEMAN KREKSTEIN & HARRIS, P.C.
BNY Mellon Center, Suite 600
1735 Market Street
Philadelphia, PA  19103-7513
215-893-9300
215-893-8719 (facsimile)
rperr@finemanlawfirm.com
Attorneys for Appellee Convergent
Outsourcing

</div>

Dated:      September 10, 2014

## CERTIFICATE OF SERVICE

I, RICHARD J. PERR, ESQUIRE, hereby certify that on this date, I served a

true and correct copy of the foregoing Petition for Rehearing En Banc or Panel

Rehearing, via the court's electronic filing system and PDF via email on the

following:

> Cary L. Flitter
> Andrew M. Milz
> Flitter Lorenz, P.C.
> 450 North Narberth Avenue, Suite 101
> Narberth, PA 19072-1898
> (v) 610-266-7863; (f) 610-667-0552
> cflitter@consumerslaw.com; amilz@consumerslaw.com
>                   and
> SaraEllen M. Hutchison, Esquire
> Law Office of SaraEllen Hutchison, PLLC
> 107 South Howard, Suite 230
> Spokane, WA 99201
> (v) 509-252-1899
> saraellen@saraellenhutchison.com
>
> Attorneys for Plaintiff/Appellant

                                   /S/ Richard J. Perr
                              RICHARD J. PERR, ESQUIRE

Dated:        September 10, 2014

# EXHIBIT A

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 13-3588

---

COURTNEY DOUGLASS, on behalf
of herself and all others similarly situated,
Appellant

v.

CONVERGENT OUTSOURCING,
formerly known as ER SOLUTIONS, INC.

---

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-12-cv-01524)
District Judge: Honorable Joel H. Slomsky

---

Argued: April 8, 2014

Before: FISHER and SCIRICA, *Circuit Judges*, and *MARIANI, *District Judge*

---

**JUDGMENT**

---

*Honorable Robert D. Mariani, District Judge for the Middle District of Pennsylvania, sitting by designation.*

This cause came to be heard on the record from the United States District Court for the Eastern District of Pennsylvania and was argued by counsel on April 8, 2014. On consideration whereof, it is now hereby

ORDERED and ADJUDGED by this Court that the order of the District Court entered August 6, 2013, be, and the same is hereby VACATED and REMANDED for further proceedings. Costs taxed against Appellee. All of the above in accordance with the opinion of this Court.

ATTEST:

s/Marcia M. Waldron
Clerk

DATED: August 28, 2014

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 13-3588

———————

COURTNEY DOUGLASS, on behalf
of herself and all others similarly situated,
Appellant

v.

CONVERGENT OUTSOURCING,
formerly known as ER SOLUTIONS, INC.

———————

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-12-cv-01524)
District Judge: Honorable Joel H. Slomsky

———————

Argued April 8, 2014

Before: FISHER and SCIRICA, *Circuit Judges*, and
\*MARIANI, *District Judge*

*\*Honorable Robert D. Mariani, District Judge for the Middle
District of Pennsylvania, sitting by designation.*

(Filed: August 28, 2014)


Cary L. Flitter, Esq. [ARGUED]
Andrew M. Milz, Esq.
Flitter Lorenz
450 North Narberth Avenue
Suite 101
Narberth, PA  19072

*Counsel for Appellant*


Richard J. Perr, Esq. [ARGUED]
Fineman, Krekstein & Harris
1735 Market Street
Mellon Bank Center, Suite 600
Philadelphia, PA  19103

Ed W. Walton, Esq.
Bush & Ramirez
101 Metro Drive
Terrell, TX  75160

*Counsel for Appellee*

———————

OPINION OF THE COURT

———————

SCIRICA, *Circuit Judge*.

In this case we are asked to decide whether the disclosure of a consumer's account number on the face of a debt collector's envelope violates § 1692f(8) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Section 1692f(8) limits the language and symbols that a debt collector may place on envelopes it sends to consumers. The District Court held the account number met a "benign language" exception to § 1692f(8) and granted summary judgment to the debt collector. We will vacate and remand.[1]

## I.

On May 16, 2011, Plaintiff Courtney Douglass received a debt collection letter from Convergent Outsourcing ("Convergent") regarding the collection of a debt that Douglass allegedly owed T-Mobile USA. Visible on the face of the letter, above Douglass's name and address, was the following sequence of numbers representing Douglass's account number with Convergent: "R-xxxx-5459-R241." This number does not refer or relate to her account with T-Mobile USA. Convergent mailed the letter in an envelope with a glassine window. When mailed, the top portion of the letter, including Douglass's account number, was visible through the window. Also visible through the window was Douglass's name and address, a United States Postal Service bar code, and a quick response ("QR") code, which, when

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. Our jurisdiction is provided by 28 U.S.C. § 1291.

scanned by a device such as a smart phone, revealed the same
information as that displayed through the glassine window, as
well as a monetary amount corresponding to Douglass's
alleged debt.

This action was filed in the United States District
Court for the Eastern District of Pennsylvania.[2]    The
complaint was amended to add Douglass as the sole named
plaintiff, as well as to initiate a putative class action on behalf
of residents of Montgomery County, Pennsylvania, who
received similar letters from Convergent exposing their
account numbers.  The operative Second Amended Complaint
alleges when Convergent disclosed Douglass's account
number, both on the face of the envelope and embedded in
the QR code, it violated § 1692f(8) of the FDCPA, which
prohibits "using any language or symbol" other than a debt
collector's name and address on an envelope.  15 U.S.C.
§ 1692f(8).  Convergent moved for summary judgment under
Fed. R. Civ. P. 56, contending the account number qualified
as "benign language" that § 1692f(8) was not meant to
prohibit.

The District Court granted summary judgment to
Convergent.  The court reasoned that a strict interpretation of
§ 1692f(8) would contradict Congress's true intent, aimed at
barring markings on an envelope that would reveal the letter
to pertain to debt collection or harass or humiliate a
consumer.  Accordingly, the court adopted a benign language

---

[2]    Another recipient of a debt collection letter from
Convergent, Elisa Brooks-Cunningham, initially filed the
complaint.  Brooks-Cunningham is no longer a party to this
action.

exception to the statute, limiting § 1692f(8)'s reach to language or symbols that either (1) signal the letter's purpose of debt collection or (2) tend to humiliate, threaten, or manipulate the recipient of the letter. The court concluded the account number qualified as benign language because it neither indicated the purpose of the letter nor threatened, harmed, or manipulated Douglass. This timely appeal followed.[3]

## II.

On appeal, Douglass contends the language of § 1692f(8) is unambiguous and plainly applies to Convergent's disclosure of her account number on the face of the envelope.[4] Convergent maintains that to enforce the plain meaning of § 1692f(8) would lead to absurd results and the statute must be read to allow for certain benign language, including account numbers, on the face of the envelope. In reply, Douglass insists that even if § 1692f(8) included an exception for benign language, her account number with Convergent is not benign. We agree with Douglass that §

---

[3] We exercise plenary review of an order granting a motion for summary judgment and apply the same standard the District Court applied. *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 996 (3d Cir. 2011). Summary judgment may be granted only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[4] Douglass no longer presses her argument that Convergent violated the FDCPA by including the QR Code on the envelope. Appellant Br. 5 n.2. We therefore do not decide that issue.

1692f(8) applies to this set of facts and her account number is not benign.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). These abusive debt collection practices, Congress found, lead to personal bankruptcies, marital instability, the loss of jobs, and, relevant to our analysis, "invasions of individual privacy." *Id.* § 1692(a). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013).

To further the FDCPA's purposes, § 1692f prohibits a debt collector from using "unfair or unconscionable means" to collect a debt. 15 U.S.C. § 1692f. The statute sets out a nonexclusive list of conduct that qualifies as unfair or unconscionable. *Id.* Subparagraph 8, the focus of this appeal, prohibits the following conduct:

> [u]sing any language or symbol, other than the debt collector's    address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use   his business  name if such name does not indicate that he is in the debt collection business.

*Id.* § 1692f(8).

This case requires us to determine whether § 1692f(8) prohibits Convergent's disclosure of Douglass's account number. In statutory interpretation, we begin with the text. *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011). "If the statute's plain language is unambiguous and expresses [Congress's] intent with sufficient precision, we need not look further." *Id.* (citing *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009)). But if the "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," then we are obligated to "construe statutes sensibly and avoid constructions which yield absurd or unjust results." *United States v. Fontaine*, 697 F.3d 221, 227 (3d Cir. 2012) (internal citations and quotation marks omitted). Where the plain meaning of a statute would lead to an absurd result, we presume "the legislature intended exceptions to its language [that] would avoid results of this character." *Gov't of Virgin Islands v. Berry*, 604 F.2d 221, 225 (3d Cir. 1979) (quoting *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 487 (1868)).

As a threshold matter, we conclude that § 1692f(8)'s prohibition on language and symbols applies to markings that are visible through a transparent window of an envelope. Section 1692f(8) regulates language "*on* any envelope." 15 U.S.C. § 1692f(8) (emphasis added). In this case, the alleged violation involves language printed on the letter itself that appeared *through* the glassine window of the envelope. Interpreting § 1692f(8) in accordance with its plain meaning, we construe language "on any envelope" to mean language appearing on the face of an envelope. The statute's context further confirms this construction. Section 1692f evinces Congress's intent to screen from public view information

pertinent to the debt collection. *See* 15 U.S.C. § 1692f(7) (prohibiting correspondence by post card); *id.* § 1692f(8) (permitting a debt collector's business name to appear on an envelope only if "such name does not indicate that he is in the debt collection business"). Like language printed on the envelope itself, language appearing through a windowed envelope can be seen by anyone handling the mail. And Convergent makes no argument to the contrary. Accordingly, we hold § 1692f(8) applies to language visible through a transparent window of an envelope.

Having concluded that § 1692f(8) applies in general to the facts before us, we address whether Convergent's disclosure of Douglass's account number violates the FDCPA. We find it does.

To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *See, e.g.*, *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005). The only element at issue in this case is the fourth—whether Convergent has violated § 1692f(8) of the FDCPA.

The text of § 1692f(8) is unequivocal. "[A]ny language or symbol," except the debt collector's address and, in some cases, business name, may not be included "on any envelope." 15 U.S.C. § 1692f(8). The plain language of § 1692f(8) does not permit Convergent's envelope to display an account number. Because the statute's language is plain, our sole function is "to enforce it according to its terms," so long

as "the disposition required by that [text] is not absurd." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759 (3d Cir. 2009) (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)).

Convergent does not dispute that the plain language of § 1692f(8) prohibits including Douglass's account number on the face of the envelope. Rather, Convergent contends that a literal application of the statute creates an absurdity. If the statute is interpreted to bar any language other than a debt collector's name and address, the argument follows, then no debt collector could ever send a letter through the mail—the envelope could not display the name and address of the recipient or even a stamp without violating the FDCPA. Convergent suggests such an interpretation cannot possibly reflect Congress's intent. Accordingly, Convergent maintains that to prevent absurd results we must adopt a "benign language" exception to the FDCPA that would allow for markings on an envelope so long as they do not suggest the letter's purpose of debt collection or humiliate or threaten the debtor.

We need not decide whether § 1692f(8) contains a benign language exception because even if such an exception existed, Douglass's account number is not benign. While courts may presume Congress intended an exception to a statute that otherwise produces absurd results, *see Berry*, 604 F.2d at 225, the contours of such an exception must comport with the purposes of the Act, *Caprio*, 709 F.3d at 148; *see also Peter v. GC Servs. L.P.*, 310 F.3d 344, 352 (5th Cir. 2002) (holding that an exception for benign language could not be "stretched to cover" conduct by a debt collector implicating a "core concern of the FDCPA"). In other words, we cannot find language exempt from

§ 1692f(8) if its disclosure on an envelope would run counter to the very reasons Congress enacted the FDCPA.

Here, Convergent's disclosure implicates a core concern animating the FDCPA—the invasion of privacy. Section 1692(a) of the FDCPA explains that Congress enacted the law in response to "abundant evidence" of abusive debt collection practices that cause manifest harms to individuals, among them "invasions of individual privacy." 15 U.S.C. § 1692(a). The disclosure of Douglass's account number raises these privacy concerns. The account number is a core piece of information pertaining to Douglass's status as a debtor and Convergent's debt collection effort. Disclosed to the public, it could be used to expose her financial predicament. Because Convergent's disclosure implicates core privacy concerns, it cannot be deemed benign.

Though several courts, including the Courts of Appeals for the Fifth and Eighth Circuits, have interpreted § 1692f(8) to permit an exception for certain benign or innocuous markings, they did so in the context of envelope markings that did not have the potential to cause invasions of privacy. In *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004), the Fifth Circuit held the marking "priority letter" on the face of an envelope did not violate the FDCPA. Because the Fifth Circuit found § 1692f(8) ambiguous, it looked to the statute's legislative history and interpretation by the FTC to determine Congress's intent. *Id.* at 493-94. It considered the FTC's interpretation of the statute persuasive because it exempts a category of "harmless words or symbols" from § 1692f(8)'s reach. *Id.* at 494 (quoting FTC Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection

Practices Act (hereinafter "FTC Staff Commentary"), 53 Fed. Reg. 50,097-02, 50,108 (Dec. 13, 1988)).[5]  In addition, the court referred to Senate Report 95-382, which explains the Senate's interpretation of the FDCPA bill and describes § 1692f(8) as prohibiting "symbols on envelopes *indicating that the contents pertain to debt collection.*" *Id.* (quoting S. Rep. No. 95-382, at 8 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1702) (emphasis added).  In light of these sources, the Fifth Circuit concluded that Congress meant to exclude innocuous markings from § 1692f(8)'s prohibition.  *Id.* at 494.

The Eighth Circuit adopted a similar statutory exception in *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316 (8th Cir. 2004).  In *Strand*, the Eighth Circuit was asked to determine whether markings on an envelope reading "PERSONAL AND CONFIDENTIAL" and "IMMEDIATE REPLY REQUESTED," as well as a corporate logo, violated the FDCPA.  *Id.* at 317.  The court reasoned that the plain meaning of § 1692f(8) created "bizarre results" and therefore referred to other sources to discern Congress's intent.  *Id.* at 318.  Relying on the FDCPA's stated purpose, the legislative history, and the FTC Staff Commentary, the Eighth Circuit concluded         that         in         enacting

---

[5] The FTC Staff Commentary is not a formal regulation and is not binding.  FTC Staff Commentary, 53 Fed. Reg. at 50,098 (stating the commentary does not have the force of "formal agency action" and "is not binding on the Commission or the public"); *see also Heintz v. Jenkins*, 514 U.S. 291, 298 (1995) (declining to give conclusive weight to the FTC's interpretation of the FDCPA).

§ 1692f(8) Congress intended to proscribe only those markings that would reveal the contents of the letter to pertain to debt collection. *Id.* at 318-19. Benign markings were therefore exempt. *Id.* at 319.[6]

The disclosures in *Goswami* and *Strand* do not raise the privacy concerns present in this case. The "priority letter" marking in *Goswami* revealed no information about the debtor. 377 F.3d at 494. Nor did the corporate logo and markings reading "PERSONAL AND CONFIDENTIAL" and "IMMEDIATE REPLY REQUESTED" in *Strand*. 380 F.3d at 319. The Fifth and Eighth Circuits found these markings innocuous because they did not intimate the contents of the letters to pertain to debt collection. *Strand*, 380 F.3d at 319; *Goswami*, 377 F.3d at 494; *see also Johnson*, 799 F. Supp. at 1305 (holding the label "Revenue Department" was an innocuous marking not prohibited by § 1692f(8)); *Masuda*, 759 F. Supp. at 1466 (finding no FDCPA violation where an envelope contained language reading

---

[6] Several district courts have adopted benign language exceptions similar to those crafted by the courts in *Goswami* and *Strand*. *Waldron v. Prof'l Med. Mgmt.*, Civ. No. 12-1863, 2013 WL 978933, at *3-6 (E.D. Pa. Mar. 13, 2013) (finding a QR code met a benign language exception to § 1692f(8)); *Johnson v. NCB Collection Servs.*, 799 F. Supp. 1298, 1305 (D. Conn. 1992) (holding § 1692f(8) permits the display of benign language, including the label "Revenue Department," on an envelope); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1466 (C.D. Cal. 1991) (adopting a benign language exception and applying it to language on an envelope reading "PERSONAL & CONFIDENTIAL" and "Forwarding and Address Correction Requested").

"PERSONAL & CONFIDENTIAL" and "Forwarding and Address Correction Requested"). But these courts did not confront an envelope that displayed core information relating to the debt collection and susceptible to privacy intrusions. For this reason, the cases cited by Convergent are inapposite.

Neither Senate Report 95-382 nor the FTC Staff Commentary supports an exception to § 1692f(8) that would exempt the identifying information in this case. The Senate Report lists specific practices that § 1692f would prohibit:

> collecting amounts in excess of the debt or interest owed; causing charges   for communications to be billed to a consumer; repossessing property if    there is no valid security interest or if it is exempt by law from repossession; communicating information about a debt by postcard; and    using symbols on envelopes indicating that the contents pertain to debt   collection.

S. Rep. No. 95-382, at 8. But this list does not purport to be complete, and the Report makes no mention of the sort of debtor-identifying information at issue in this case. Absent a more relevant statement regarding the presence of personal data on debt collection envelopes, this legislative history does not      support     a       construction      of § 1692f(8) that would permit the disclosure of information implicating a core concern of the FDCPA.

The FTC Staff Commentary is likewise unpersuasive.[7]
The                    FTC                    interprets
§ 1692f(8) to permit the presence on an envelope of
"harmless words or symbols" and lists examples of harmless
markings—a Western Union logo, the label "telegram," or the
word "Personal" or "Confidential." FTC Staff Commentary,
53 Fed. Reg. at 50,108. But like Senate Report 95-382, the
FTC Staff Commentary does not address markings that have
the potential to identify the debtor and her debt. Moreover,
the examples offered by the FTC, which are similar to those
addressed in *Goswami* and *Strand*, bear no relation to the
disclosure in this case.

Convergent insists that Douglass's account number is a
meaningless string of numbers and letters, and its disclosure
has not harmed and could not possibly harm Douglass.[8] But

---

[7] As noted above, the FTC's interpretation is not a formal rule
entitled to some deference. It is at most persuasive,
nonbinding authority. *Goswami*, 377 F.3d at 493 n.1.

[8] Douglass seeks only statutory damages. *See Weiss v. Regal
Collections*, 385 F.3d 337, 340 (3d Cir. 2004) (recognizing a
private action under the FDCPA can seek relief in the form of
actual damages sustained or "such additional damages as the
court may allow" (quoting 15 U.S.C. § 1692k(a))).
Convergent contends that if we find a violation of the FDCPA
in this case, Douglass is not entitled to those damages because
Convergent's disclosure was at most a technical breach. We
do not decide this matter because it is for the District Court to
determine in the first instance, based on the relevant factors
set forth in 15 U.S.C. § 1692k(b). *See* 15 U.S.C. §
1692k(b)(2) (listing factors to consider in the damages
determination, including "the frequency and persistence of

the account number is not meaningless—it is a piece of information capable of identifying Douglass as a debtor. And its disclosure has the potential to cause harm to a consumer that the FDCPA was enacted to address. As we have stated before, the FDCPA "must be broadly construed in order to give full effect to [Congress's remedial] purposes." *Caprio*, 709 F.3d at 148. Construing § 1692f(8) in accord with the FDCPA's purposes in § 1692(a), we find the statute not only proscribes potentially harassing and embarrassing language, but also protects consumers' identifying information. Accordingly, Douglass's account number is impermissible language or symbols under § 1692f(8).[9]

## III.

For the foregoing reasons, we will vacate the District Court's order granting summary judgment to Convergent and remand for further proceedings in accordance with this opinion.

---

noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional").

[9] We recognize that 15 U.S.C. § 1692f(8) should not be read to create absurd results. But we believe the disclosure of private information in this case is proscribed by the Act. We express no opinion as to the benign language exception that some courts have adopted.